HUGHES SALARIED RETIREES AC-TION COMMITTEE; Peter Formo; Richard E. Miller; Norman C. Rigby, Plaintiffs–Appellants,

v.

ADMINISTRATOR OF the HUGHES NON–BARGAINING RETIREMENT PLAN, Defendant–Appellee.

No. 93–55384.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1993.

Decided Nov. 7, 1994.

As Modified Feb. 13, 1995.

Seth Kupferberg, Sipser, Weinstock, Harper & Dorn, New York City, for plaintiffs-appellants.

Robert F. Walker, Paul, Hastings, Janofsky & Walker, Santa Monica, CA, for defendant-appellee.

Before: FLETCHER, PREGERSON, and NORRIS, Circuit Judges.

Opinion by Judge PREGERSON; Dissent by Judge NORRIS.

PREGERSON, Circuit Judge:

The Hughes Salaried Retirees Action Committee (the "Committee") and three individual participants in the Hughes Non–Bargaining Retirement Plan (the "Plan") [collectively the "Retirees"] brought an action under § 502 of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, against the Plan administrator (the Administration). The Retirees alleged that the Administrator breached his fiduciary duties and violated ERISA disclosure requirements when he refused to provide them with a list of the names and addresses of Plan participants. The district court dismissed the Retirees' complaint for failure to state a claim and denied the Administrator's request for attorneys' fees. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part and reverse and remand in part.

## BACKGROUND

■ The Committee was formed for the purpose of communicating with Plan participants and beneficiaries about their rights under the Plan and Hughes Aircraft's failure to use surplus Plan assets to increase benefits. In April 1990, the Committee wrote to the Administrator to request a list of Plan participants' names and addresses. By letter, the Administrator denied the request.[1]

1. Because this is an appeal from a dismissal under Fed.R.Civ.P. 12(b)(6), we accept the facts

The Retirees then filed an action under ERISA for breach of fiduciary duty and enforcement of their right to disclosure of the names and addresses of Plan participants. The Retirees want to use the list to inform Plan participants and beneficiaries about Hughes' allegedly improper use of the Plan's approximately $1 billion in surplus assets,[2] and to gain support for future efforts to negotiate with Hughes or litigate to create increased Plan benefits using the surplus assets. The Retirees also intend to use the list to form a watchdog committee to assure that the Plan is properly managed. The Retirees contend that, under these circumstances, the Administrator's refusal to supply the names and addresses amounted to a breach of his fiduciary duty of care, ERISA § 404(a)(1)(A); violated the requirement that an administrator provide participants and beneficiaries with certain plan documents, ERISA § 104(b)(4); and violated the Administrator's fiduciary duty to manage the Plan in accordance with its terms, ERISA § 404(a)(1)(D).

■ In December 1992, the Administrator moved to dismiss the Retirees' amended complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6). The district court granted the Administrator's motion. The Retirees timely appeal.[3]

## ANALYSIS

■ We review de novo the district court's dismissal of the Retirees' complaint under

Fed.R.Civ.P. 12(b)(6). *Oscar v. University Students Co-operative Ass'n*, 965 F.2d 783, 785 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992).

## I. Non–Disclosure as Violation of ERISA § 404(a)(1)(A)

■ The Retirees allege that the Administrator's refusal to provide the requested list of names and addresses violated ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A). That section provides that the Administrator, as fiduciary to the Plan,[4] must discharge his duties of plan administration "solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan...." ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).[5]

■ We interpret the fiduciary duties under ERISA by " 'bearing in mind the special nature and purposes of employee benefit plans intended to be effectuated by [ERISA].' " *Acosta v. Pacific Enterprises*, 950 F.2d 611, 618 (9th Cir.1991) (quoting H.R.Rep. No. 533, 93d Cong., 2nd Sess. (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4650). The fiduciary duties help ensure that employee plan participants and beneficiaries are equipped to safeguard their rights.

---

· alleged in the complaint as true. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.1989).

2. A related appeal, *Jacobson v. Hughes Aircraft Co.*, No. 93–55392, concerns the merits of Hughes' alleged improper use of surplus assets.

3. The Retirees filed notice of appeal on March 1, 1993. We reject the Administrator's contention that this appeal is untimely because it was filed more than 30 days from the district court's entry of the Civil Minutes on January 20, 1993. In fact, the appeal *is* timely because the notice of appeal was filed within 30 days of the entry of judgment on February 10, 1993. *See* Fed. R.App.P. 4(a)(1) ("In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed

from...."); *Vernon v. Heckler*, 811 F.2d 1274, 1276 (9th Cir.1987) (explaining that until the judgment is set forth on a separate document, the period for filing notice of appeal is tolled).

4. The Administrator does not challenge the Retirees' allegation that he was a fiduciary to the Plan.

5. The Retirees also allege that the Administrator violated ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), which requires a fiduciary to discharge the duties of plan administration "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims...." We do not address this claim because neither the district court's order nor the parties' briefs address it.

Disclosure has been seen as a device to impart to employees sufficient information and data to enable them to know whether the plan [is] financially sound and *being administered as intended.* It [is] expected that the information disclosed [will] *enable employees to police their plans....* [T]he *safeguarding effect* of the fiduciary responsibility section will operate efficiently only if fiduciaries are aware that the details of *their dealings will be open to inspection,* and that individual *participants and beneficiaries will be armed with enough information to enforce their own rights....* 1974 U.S.C.C.A.N. at 4649 (emphasis added); *United States v. Sarault,* 840 F.2d 1479, 1484 (9th Cir.1988) (Congress enacted ERISA to enable retirees to police their own plans and receive the information needed to do so). Therefore, based on ERISA § 404(a), the Administrator's disclosure duty "may in some circumstances extend to additional disclosures [beyond the requirements of ERISA §§ 101–11, 29 U.S.C. §§ 1021–31] *where the interests of the beneficiaries so require."* *Acosta,* 950 F.2d at 618 (emphasis added).

 The Administrator's disclosure duty based on ERISA § 404(a) derives from common law trust duties of a fiduciary. *Id.* A fiduciary's common law duties include a duty to furnish to each beneficiary all information that she needs to enforce her rights under the trust. Restatement (Second) of Trusts § 173. A trust beneficiary is entitled to a list of the names of beneficiaries so that she can communicate with them for mutual aid and protection. This right of a trust beneficiary to know the identity of fellow beneficiaries creates a duty in the trustee to provide the information upon demand. *See* George Gleason Bogert, 46 *The Law of Trusts and Trustees,* Rev. 2nd Ed. § 961, p. 8 (1978).

 ERISA § 404(a) incorporates the common law trust duties regarding disclosure "to the extent that they relate to the provision of benefits or the defrayment of expenses, and only insofar as they do not contradict or supplant the existing reporting and disclosure provisions." *Acosta,* 950 F.2d

at 618.[6] In this case, as in *Acosta,* we focus on the relationship of a disclosure duty "to the provision of benefits." In *Acosta,* a plan participant demanded a list of plan participant names, addresses, and shareholdings, to solicit votes for an election of corporate directors. We found no fiduciary disclosure duty because there was an insufficient nexus between the provision of benefits and the request. "The term 'benefit' refers to a participant's or beneficiary's right to receive monies from the plan administrator ..., not the right to vote in an election for corporate officers." *Id.* *See also In re Sears, Roebuck and Co. Secs. Litig.,* 792 F.Supp. 977, 983–84 (E.D.Pa.1992) (following *Acosta,* and finding no fiduciary duty to pay costs of mailing a board candidate's proxy statement to plan participants).

In *Acosta,* we did *not* hold that plan participants may never obtain a list of participants' names and addresses; we held *only* that the solicitation of votes for corporate directors is not related to the provision of plan benefits. The present case is distinguishable from the vote solicitation in *Acosta.*

The Retirees requested the participant list for two purposes: (1) to communicate with other Plan participants and beneficiaries about increasing benefits from the Plan's surplus funds; and (2) to create a watchdog committee to ensure that the Administrator properly manages the Plan. Both of these purposes relate to the Administrator's duty to provide benefits: The Retirees' underlying purpose in both instances is to ensure that Plan participants are receiving and continue to receive benefits to which they are entitled under the Plan, including increased benefits from the Plan's surplus assets. Access to the list could help the Retirees to secure what they perceive to be their rights under the Plan. This connection between the requested list and the "provision of benefits" satisfies our test in *Acosta.* Therefore, the Administrator had a fiduciary duty to disclose the list.

 The district court incorrectly concluded otherwise because it focused on

---

**6.** The Administrator concedes that a disclosure duty covering the participant mailing list would

not contradict or supplant the existing ERISA reporting and disclosure provisions.

the *information* the list provides rather than the Retirees' *purpose* for seeking it. (District Court Order at 6) ("[O]ther plan participants have no *information* about the payment of benefits, while the Administrator does. [The Retirees] do not, then, seek *information* about the provision of benefits. . . ."). *Acosta* requires us to focus on the Retirees' purpose for seeking the list. *See Acosta,* 950 F.2d at 619. Only the Retirees' purpose for wanting the list, not the list itself, must relate to the provision of benefits. Under *Acosta,* the Administrator had a fiduciary duty to disclose the list. The district court erred in concluding otherwise.[7]

By this opinion, we do *not* imply that administrators have a fiduciary duty to disclose a list of plan participant names and addresses *as a matter of course in every case.* The fiduciary disclosure duty applies only when, as in this case, a plan participant or beneficiary intends to use the demanded list to enforce her rights under an ERISA plan or to monitor the administrator's management of plan assets in accordance with ERISA requirements. Communicating with fellow Plan participants for these purposes "relates to the provision of benefits." Were we to deny reasonable demands by plan participants and beneficiaries for information that can aid them in enforcing their rights to ERISA-protected benefits, we would ignore congressional intent, discussed *supra,* to arm employees with sufficient information to protect their interests. Therefore, we reverse dismissal of the Retirees' claim under § 404(a)(1)(A).

## II. Non–Disclosure as Violation of ERISA § 104(b)(4)

As a second cause of action, the Retirees allege that the Administrator's failure to supply the Plan participant list violated the disclosure requirement of ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4). That section provides:

> The administrator shall, *upon written request of any participant or beneficiary,* furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or *other instruments under which the plan is established or operated.* The administrator may make reasonable charge to cover the cost of furnishing such complete copies.

ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) (emphasis added). The Retirees argue that the requested list of participant names and addresses is one of the "other instruments under which the plan is . . . operated," *id.,* because the list is essential to operating the Plan.

We agree with the Retirees and hold that a mailing list of plan participants (or beneficiaries) is an "instrument[ ] under which [a] plan is . . . operated" within the meaning of ERISA § 104(b)(4). The mailing list is critical to the operation of a plan because without it an administrator could not possibly pay benefits or keep plan participants informed of plan administration. *Compare Werner v. Morgan Equip. Co.,* 15 Employee Benefits Cas. 2295, 1992 WL 453355, at *6 (N.D.Cal. 1992) (valuation reports are within ERISA § 104(b)(4) because they are used to "carry out" the determination of benefits, which is "a regular, required and necessary function of the operation of the [plan]") *and Lee v. Dayton Power and Light Co.,* 604 F.Supp.

---

**7.** The district court also based its ruling on its finding that the Retirees' amended complaint alleged no facts that would establish an entitlement to the Plan's surplus assets. (District Court Order at 6). The court concluded that the Retirees "have no right to force the Administrator to disclose *information* about [surplus assets] to which they are not entitled." *Id.* For purposes of this appeal, we need not address the merits of the Retirees' claim to the surplus Plan assets. We note, however, that plan participants and beneficiaries are *not* required to establish an entitlement to specific benefits in order to trigger the fiduciary disclosure duty. Plan participants and beneficiaries are entitled to receive mailing lists (assuming the *Acosta* test is met) *without* establishing a right to unpaid benefits.

At the stage where disclosure is sought, the merits of the lawsuit have simply not been sufficiently well developed to permit the district court to determine whether or not the requesters have established that they are entitled to additional benefits. However, so long as the requesters have established the requisite nexus between disclosure and the claim to provision of additional benefits, the Administrator's disclosure duties are triggered.

987, 1002 (S.D.Ohio 1985) (a manual containing charts essential to the calculation of benefits is an "underlying plan document" and therefore, an instrument under which the plan is established or operated) *with Chambless v. Masters, Mates & Pilots Pension Plan,* 571 F.Supp. 1430, 1456–57 (S.D.N.Y. 1983) (minutes of trustee meetings and decisions are not within ERISA § 104(b)(4)).

■ The Administrator urges us to limit the broad statutory language: "instruments under which the plan is established or operated." In much the same vein, the district court, in dismissing the Retirees' claim, explained that ERISA § 104(b)(4) limits the universe of "other instruments" to those documents that are similar to documents specifically listed in that section. The district court stated that § 104(b)(4) requires the Administrator to disclose *only* those documents that describe the terms and conditions of the Plan or its administration and financial status.

The court contrasted such documents with the mailing list that the Retirees seek because the list would provide the Retirees with no information *about the Plan.* The language of § 104(b)(4), however, contains no such limitation, and we have found no other authority for limiting the statutory language this way.[8] Therefore, we reverse the dismissal of the Retirees' claim under § 104(b)(4).

## III. Violation of the Plan's Terms as Fiduciary Breach

■ The Retirees' third claim is that the Administrator breached his fiduciary duty under ERISA § 404(a)(1)(D)[9] by violating Art. V § 5.1(g) of the Plan, which authorizes the Administrator to impose a reasonable charge to cover the cost of furnishing documents to participants and beneficiaries upon their written request pursuant to ERISA § 104(b)(4). We affirm the district

---

8. The Administrator refers us to *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 740, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985), which cautions that construction of ERISA provisions "must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose" (internal quotations omitted).

*Metropolitan Life,* however, does not support the Administrator's position. The language of the statute does *not* contain the limitation the Administrator urges us to adopt, and the legislative history of ERISA § 104(b)(4) simply confirms that the plain meaning of the statute is the meaning which Congress intended. The relevant history indicates that Congress created the ERISA § 104(b)(4) disclosure requirements to improve the quality of information participants receive about operation of their plan, and thus enable them to better police the plan. The Committee on Labor and Public Welfare explained as follows:

> The underlying theory of the Welfare and Pension Plans Disclosure Act to date has been that reporting of *generalized information* concerning plan operations to plan participants and beneficiaries to the public in general would ... insure that the plan would be operated according to instructions and *in the best interests of participants and beneficiaries.* The Secretary's role in this scheme was minimal. Disclosure has been seen as a device to impart to employees sufficient information and data to enable them to know whether the plan was financially sound and being administered as intended. *It was expected that the information disclosed*

would enable employees to police their plans. But experience has shown that the limited data available under the present Act is insufficient. Changes are therefore required to increase the information and data required in the reports both in scope and detail. Experience has also demonstrated a need for a more particularized form of reporting so that the individual participant knows exactly where he stands with respect to the plan—*what benefits he may be entitled to,* what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted. At the same time *the safeguarding effect of the fiduciary responsibility section will operate efficiently only if fiduciaries are aware that the details of their dealings will be open to inspection and the individual participants and beneficiaries will be armed with enough information to enforce their own rights as well the obligations owed by fiduciary to the plan in general.* S.Rep. No. 127, 93rd Cong., 2d Sess. (1973), *reprinted in* 1974 U.S.C.C.A.N. 4838, 4863 (emphasis added).

9. ERISA § 404(a)(1)(D) provides as follows:

> A fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. § 1104(a)(1)(D).

court's dismissal of this claim. The Administrator did not violate the Plan provision that allows him to charge the Retirees for copies of documents because he has not yet disclosed the documents. Nor do we see how this provision creates *any* substantive rights for *the Retirees.*[10]

## IV. Attorneys' Fees on Appeal

 The Retirees seek attorneys' fees *on appeal* under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1). ERISA § 502(g)(1) provides, in relevant part: "In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." To determine whether to award attorneys' fees under ERISA § 502(g)(1) a court should consider:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Franklin v. Thornton,* 983 F.2d 939, 943 (9th Cir.1993) (quoting *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir.1980)). The Retirees sought to resolve a significant legal question regarding ERISA, they sought to benefit all Plan participants, and their position is meritorious. For these reasons, we grant their request for attorneys' fees on appeal.

**AFFIRMED** in part; **REVERSED AND REMANDED** in part.

WILLIAM A. NORRIS, Circuit Judge, dissenting.

In *Acosta v. Pacific Enterprises,* 950 F.2d 611 (9th Cir.1991), *as amended on reh'g* (9th Cir.1992), the plaintiff, a participant in a Pacific Enterprises' pension plan, requested that the plan trustee provide him with a list of the names, addresses, and voting shares of Pacific Enterprises' stock held by each plan participant so that he could solicit votes in a board of directors election. We rejected Acosta's claim that ERISA required a fiduciary to disclose the list because such information was not "sufficiently related to the provision of benefits or the defrayment of expenses."[1] *Id.* at 619. We held that "common law trust duties regarding the disclosure of information to beneficiaries may be read into ERISA ... only to the extent that they relate to the provision of benefits or the defrayment of expenses."[2] *Id.* at 618. Under *Acosta,* therefore, ERISA does not mandate disclosure unless there is a sufficient nexus between the information requested and the provision of benefits or the defrayment of expenses.

I agree with the well-reasoned decision of the district court in this case. Following *Acosta,* the district court held that the Administrator is under no obligation to disclose the names and addresses of all 60,000 plan participants in the Hughes pension plan because such a list provides no information or access to information about the provision of benefits or the defrayment of expenses under the plan. Indeed, plaintiffs do not request the list to gain this kind of information. Rather, they wish to gain access to other participants to help them "police" the admin-

---

**10.** The Retirees also allege that the Administrator breached his fiduciary duty by violating Article V § 5.2 of the Plan. That section states that the "Plan shall be administered, interpreted and applied fairly and equitably and in accordance with the specified purpose of the Plan." We read the Retirees' failure to address Article V § 5.2 on appeal to mean that they do not appeal the district court's dismissal of this claim.

**1.** We made clear that the term "benefit" refers only "to a participant's or beneficiary's right to receive monies from the plan administrator or trustee." 950 F.2d at 619. (footnote omitted).

**2.** Even if, as the majority asserts, plaintiffs' request would be granted under the common law of trusts, *Acosta* limits the applicability of that law by requiring a nexus between the information and benefits.

istration of the plan and to rally support for efforts to obtain an increase in benefits.

In what I believe is a misreading of *Acosta,* the majority reverses the district court, holding that ERISA requires the Hughes administrator to disclose the names and addresses of the participants because plaintiffs' asserted *purpose* for the request concerns the provision of benefits. In doing so, the majority, citing no authority, shifts from the objective standard of *Acosta* (the nature of the document requested) to a subjective standard (the alleged intent of the requestors). In the context of requests under the Freedom of Information Act, the Supreme Court has held that the question of disclosure "cannot turn on the purposes for which the request for information is made." *United States Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 771, 109 S.Ct. 1468, 1480, 103 L.Ed.2d 774 (1989). Instead, disclosure "must turn on the nature of the requested document" because disclosure of personal information constitutes an "invasion of privacy." *Reporters Committee,* 489 U.S. at 772, 771, 109 S.Ct. at 1481, 1480.

The majority ignores the privacy interests at stake in ordering Hughes to disclose the participants' names and addresses. If disclosed to one group of participants, presumably the list must be disclosed to any other group of participants asserting that they too want to garner support for increased benefits. And once any group of participants has the list, there is no assurance that it will not fall into the hands of others who will exploit it for their own commercial purposes. In this case, the list will include over 60,000 Hughes employees' names and addresses, making it a list of considerable commercial value. In other words, there is no reason to believe there is not a "substantial probability that the disclosure will lead to the use of the list by marketers and a concomitant invasion of the workers' right to be let alone." *Painting Industry of Hawaii Market Recovery Fund v. United States Air Force,* 26 F.3d

1479, 1483 (9th Cir.1994) (citations omitted). *See also id.* at 1486 (Norris, J., concurring) ("The invasion of privacy that results from disclosure of one's home address is far more substantial than, say, the disclosure of one's phone number [because] home addresses are not routinely available."); *United States Department of Defense v. Federal Labor Relations Authority,* —— U.S. ——, ——–——– 114 S.Ct. 1006, 1015–16, 127 L.Ed.2d 325 (1994) ("when we consider that other parties, such as commercial advertisers and solicitors, must have the same access ... to the employee address lists sought in this case, [ ] it is clear that the individual privacy interest that would be protected by nondisclosure is far from insignificant.") (citations omitted).

In addition to ignoring the privacy interests of the participants, the majority ignores the administrative costs of disclosing lists to any group of participants who ask for them for the asserted purpose of trying to rally support for increased benefits. Administrative costs, of course, are paid out of plan assets.

The majority holds, in the alternative, that ERISA mandates the disclosure of the list of names and addresses because it is one of the "other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4) (1985).[3] As the district court held, ERISA implicitly limits "other instruments" to those documents that are similar to the documents specifically listed in that section. For example, upon request, an administrator must provide a participant with a copy of the plan description, the latest annual report, any terminal report, the bargaining agreement, or trust agreement. *See* 29 U.S.C. § 1024(b)(4). These documents all provide participants with direct information about the plan and its benefits. The requested mailing list, in contrast, provides no information about the plan or its benefits. *Cf. Lee v. Dayton Power and Light Co.,* 604 F.Supp. 987, 1002 (S.D.Ohio 1985) (holding that a manual containing charts essential to

---

**3.** This section of ERISA provides: "The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4).

the calculation of benefits is an instrument under which the plan was established or operated). It is an unwarranted expansion of the meaning of "other instruments" to interpret it to include the names and addresses of plan participants.

I respectfully dissent.