HUGHES SALARIED RETIREES ACTION COMMITTEE; Peter Formo; Richard E. Miller; Norman C. Rigby, Plaintiffs–Appellants,

v.

ADMINISTRATOR OF the HUGHES NON–BARGAINING RETIREMENT PLAN, Defendant–Appellee.

No. 93–55384.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1993.

Opinion Filed Nov. 7, 1994.

Order Granting Rehearing En Banc July 14, 1995.

Argued and Submitted July 20, 1995.

Decided Dec. 15, 1995.

**688**

Jerome Tauber, Richard Dorn, Sipser, Weinstock, Harper & Dorn, New York City, for plaintiffs-appellants.

Robert F. Walker, Paul, Hastings, Janofsky & Walker, Santa Monica, California, for defendant-appellee.

Before: WALLACE, Chief Judge, HUG, FLETCHER, PREGERSON, CANBY, NORRIS, REINHARDT, WIGGINS, BRUNETTI, O'SCANNLAIN, and RYMER, Circuit Judges.

Dissent by Judge PREGERSON.

WILLIAM A. NORRIS, Circuit Judge:

This appeal presents two questions:

(1) whether § 104(b)(4) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1024(b)(4), requires a plan administrator to furnish individual participants upon request with the names and addresses of other plan participants. We hold that it does not because such a list is not an "instrument[ ] under which the plan is established or operated," *id.;*

(2) whether a plan administrator has a general fiduciary duty under ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), to furnish individual participants with the names and addresses of other plan participants. We hold that it does not because this information is not related to "providing benefits to participants and their beneficiaries [or] defraying reasonable expenses of administering the plan," the exclusive purposes for which the plan administrator may discharge its duties, *id.*

## I

### Background

Plaintiffs are three retirees (the "Retirees") who receive defined pension benefits from the Hughes Non–Bargaining Retirement Plan (the "Plan"). They are members of a self-appointed committee called the Hughes Salaried Retirees Action Committee, an organization that is also a named plaintiff. The Plan has some 60,000 participants, of whom some 10,000 are retirees.

The Retirees brought this action under ERISA to compel the Plan administrator (the "Administrator") to furnish them with a list of the names and addresses of all retired participants of the Plan so the Retirees can "communicate with them about matters of concern to all retired participants regarding their pensions...." Am.Compl. ¶ 1. In particular, the Retirees say they want to communicate with other retirees about Hughes's allegedly "unlawful use of excess Plan assets for the sole purpose of meeting Hughes' funding obligations" and "to gain support for their efforts to obtain increased benefits through negotiation or if required, litigation, as well as to monitor the Plan."[1] *Id.* at ¶ 10.

The district court dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. A three-judge panel of our court reversed.[2] *Hughes*

---

**1.** In a related appeal, *Jacobson v. Hughes Aircraft Co.,* No. 93–55392, five other retirees who receive benefits from the Plan sought a termination of the Plan and a distribution of the assets to Plan participants because of Hughes's allegedly improper use of Plan assets. The complaint in that case was dismissed by the district court for failure to state a claim. Order of Dismissal of Action, filed Feb. 9, 1993. That appeal is currently pending before this court.

**2.** The Administrator argues that the appeal is untimely because the notice of appeal was filed more than 30 days from the district court's entry of the Civil Minutes on January 20, 1993. However, the appeal is timely because the period for filing a notice of appeal is tolled until the judgment is set forth in a separate document. *See* Fed.R.App.P. 4(a)(1); *Vernon v. Heckler,* 811 F.2d 1274, 1276 (9th Cir.1987).

*Salaried Retirees Action Comm. v. Administrator of the Hughes Non–Bargaining Retirement Plan,* 39 F.3d 1002 (9th Cir.1994). A majority of the active judges of the court voted to rehear the case en banc, 53 F.3d 1090 (9th Cir.1995), and we now vacate the panel's opinion and affirm the judgment of the district court dismissing the complaint for failure to state a claim upon which relief may be granted.

## II

### ERISA § 104(b)(4)

■ We first consider the Retirees' claim that the Administrator must furnish them with the names and addresses of retired Plan participants because this information is an "instrument[ ] under which the plan is established or operated" within the meaning of ERISA § 104(b)(4). Am.Compl. ¶¶ 18–20. Section 104(b)(4) provides:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or *other instruments under which the plan is established or operated.* The administrator may make reasonable charge to cover the cost of furnishing such complete copies.

29 U.S.C. § 1024(b)(4) (emphasis added). According to the Retirees, the requested list of names and addresses falls within the statute because the Plan could not operate without it.

The district court, in rejecting the Retirees' interpretation, explained:

> Such an interpretation so strains the meaning of [§ 104(b)(4) ]'s language that it is impossible to conceive of any documents even tangentially related to an employee benefit plan which would not fall within its scope. Moreover, if there are limits, there is no way that [the Retirees'] reading of the statute would allow a plan administrator to know what they are. Such a result would subvert the intent of Congress to

provide "detailed and uniform guidance" as to what information must be furnished to plan participants.

Order of Dismissal, filed July 9, 1991, at 6.

We agree with the district court that the Retirees' interpretation of § 104(b)(4) would "strain the meaning" of the section. The district court reasoned:

> Statutory construction of ERISA "'must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.'" *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 740 [105 S.Ct. 2380, 2389, 85 L.Ed.2d 728] (1985) (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 194 [105 S.Ct. 658, 661, 83 L.Ed.2d 582] (1985)). Following this approach, a list of plan participants cannot possibly be considered an instrument "under which the plan is established or operated." The plain language of the statute limits the universe of documents falling within that phrase to documents similar in nature to those specifically identified, which describe the terms and conditions of the plan, as well as its administration and financial status. While this Court need not define precisely those documents falling under that provision, it is clear that a list of plan participants does not. Obtaining such a list provides participants with absolutely no information whatsoever about the plan, and therefore ERISA neither requires nor contemplates its disclosure.

*Id.* at 627.

■ We agree with the reasoning of the district court. It is well established that "'words grouped in a list should be given related meaning.'" *See, e.g., Massachusetts v. Morash,* 490 U.S. 107, 114–15, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989) (quoting *Schreiber v. Burlington Northern, Inc.,* 472 U.S. 1, 8, 105 S.Ct. 2458, 2462, 86 L.Ed.2d 1 (1985)) (interpreting "vacation benefits" in ERISA § 3(1) in light of other benefit plans listed in same section). The Supreme Court has recently characterized the documents

subject to § 104(b)(4)'s disclosure requirements as "governing plan documents." *Curtiss–Wright Corp. v. Schoonejongen,* —— U.S. ——, ——, 115 S.Ct. 1223, 1231, 131 L.Ed.2d 94 (1995). The relevant documents are those documents that provide individual participants with information about the plan and benefits. As the legislative history bears out, the documents contemplated by § 104(b)(4) are those that allow "the individual participant [to] know[ ] exactly where he stands with respect to the plan—what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted." S.Rep. No. 127, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 4838, 4863.[3]

Unlike the documents specifically listed in § 104(b)(4)—plan descriptions, annual and terminal reports, and bargaining and trust agreements—participants' names and addresses provide no information about the plan or benefits. As the district court said so aptly, it would strain the meaning of "other instruments under which the plan is operated" to interpret it to include participant names and addresses. *Cf. Werner v. Morgan Equip. Co.,* 15 Employee Benefits Cas. (BNA) 2295, 2301, 1992 WL 453355 (N.D.Cal. 1992) (stock valuation report is an instrument under which a plan is established or operated when the plan measures benefits by the value of stock); *Lee v. Dayton Power & Light Co.,* 604 F.Supp. 987, 1002 (S.D.Ohio 1985)

(manual containing charts essential to the calculation of benefits is an instrument under which the plan is established or operated).

In reversing the district court, our original panel reasoned that § 104(b)(4) requires disclosure of all documents that are "critical to the operation of the plan." *Hughes,* 39 F.3d at 1007. This test, however, admits of no limiting principle. For example, under this interpretation, an administrator of a medical plan would be required to disclose medical histories of participants in the plan, and the administrator of a pension or profit-sharing plan would be required to disclose wage records of participants, because the medical histories and wage records are crucial to the operation of the respective plans. It is fanciful to think that § 104(b)(4) was enacted to give plan participants an absolute right to obtain such information about other plan participants.

Indeed, under the original panel's interpretation of § 104(b)(4), a plan administrator would be required to disclose virtually everything in its plan files upon request. The panel reasoned that the language "other instruments" is not limited to documents similar to the documents specifically listed in § 104(b)(4) because the statutory language "contains no such limitation, and we have found no other authority for limiting the statutory language this way." *Id.* at 1008. In other words, according to the panel, § 104(b)(4) creates a generalized disclosure obligation subject only to articulated limits. *See also id.* at 1008 n. 8 ("The language of the statute does *not* contain the limitation the

---

**3.** The Committee on Labor and Public Welfare explained in fuller detail:

[E]xperience has shown that the limited data available under [ERISA's predecessor] is insufficient. Changes are therefore required to increase the information and data required in the reports both in scope and detail. Experience has also demonstrated a need for a more particularized form of reporting so that the individual participant knows exactly where he stands with respect to the plan—what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits,

and who are the persons to whom the management and investment of his plan funds have been entrusted. At the same time the safeguarding effect of the fiduciary responsibility section will operate efficiently only if fiduciaries are aware that the details of their dealings will be open to inspection, and that individual participants and beneficiaries will be armed with enough information to enforce their own rights as well as the obligations owed by the fiduciary to the plan in general.

S.Rep. No. 127, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 4838, 4863.

Administrator urges us to adopt. . . .") (emphasis in original). We reject the reasoning of the panel. Under its interpretation of § 104(b)(4), it would be "impossible to conceive of any documents even tangentially related to an employee benefit plan which would not fall within [§ 104(b)(4)]'s scope." Order of Dismissal, filed July 9, 1991, at 16. Such a broad disclosure requirement, however, is not supported by either the language of the statute or its legislative history. Thus we decline to interpret § 104(b)(4) to require general disclosure, subject only to specified exceptions. On the contrary, § 104(b)(4) requires the disclosure of only the documents described with particularity and "other instruments" similar in nature.

■ In sum, we agree with the district court that "other instruments under which the plan is established or operated" is limited to documents that are similar in nature to the documents specifically listed in § 104(b)(4). A list of the names and addresses of plan participants is not such a document.[4]

### III

### ERISA § 404(a)(1)(A)

■ Retirees claim in the alternative that even if § 104(b)(4) does not require the Administrator to disclose the names and addresses, ERISA's general fiduciary duty provision does. See ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A). Section 404(a) is a general standard of care provision that requires an ERISA plan fiduciary to "(1) . . . discharge his duties . . . solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing

benefits . . . and (ii) defraying reasonable expenses. . . ."[5]

In their original complaint, the Retirees asserted three purposes for requesting the names and addresses of plan participants: communicating with other retirees about Hughes's use of Plan assets; gaining support for their negotiation or litigation efforts to obtain increased benefits; and monitoring the Plan. Compl. ¶ 10. In dismissing the Retirees' § 404(a)(1)(A) claim, the district court noted that ERISA already contains a comprehensive disclosure scheme (§ 104(b)(4)), and held that, "whatever the precise duties of a plan fiduciary under [§ 404(a)(1)(A)], those duties relate to and are limited to the obligations to provide benefits to plan participants and beneficiaries, to defray reasonable expenses in administering the plan, and to act with the requisite care and skill in conducting the affairs of employee benefit plans." Order of Dismissal, filed July 9, 1991, at 5. The district court held that the Administrator had no duty to disclose the names and addresses of participants because that information was not related to any of these purposes. Id.

The Retirees filed a motion for reconsideration based on Acosta v. Pacific Enters., 950 F.2d 611 (9th Cir.1991), which was decided after the district court dismissed the Retirees' complaint. In Acosta, a plan beneficiary requested a list of the names, addresses, and number of shares each plan participant owned in the employer corporation, id. at 614–15, for the transparent purpose of forming a shareholder coalition to elect corporate directors tending to favor liberal pension benefits. We held that § 404(a)(1)(A) did not

---

4. Because we hold that the Administrator's refusal to disclose the names and addresses does not violate § 104(b)(4), we also affirm the district court's dismissal of the Retirees' § 404(a)(1)(D) claim, which is predicated on a § 104(b)(4) violation.

5. ERISA § 404 provides in relevant part:
   (a) Prudent man standard of care
     (1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall dis-

charge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
  (A) for the exclusive purpose of:
  (i) providing benefits to participants and their beneficiaries; and
  (ii) defraying reasonable expenses of administering the plan. . . .
ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

give rise to a duty to disclose the requested information because the right to vote was not a plan benefit and, thus, the plaintiff had not shown that "the disclosure requested . . . [was] sufficiently related to the provision of benefits or the defrayment of expenses." *Id.* at 619.

The district court denied the Retirees' motion for reconsideration but granted them leave to amend their complaint. Tr. of Proceed'gs, Dec. 14, 1992, at 11. In their amended complaint, the Retirees alleged that § 404(a)(1)(A) encompasses a duty to provide the participant list when sought "for purposes of communicating with the participants and beneficiaries of the Plan about matters concerning the provision of benefits and the administration of the plan." Am.Compl. ¶ 15. They further alleged that the dispute at issue—whether ERISA requires the Plan to distribute all or part of the allegedly "surplus" assets to the beneficiaries in the form of increased pension benefits—"is a matter concerning the provision of benefits and administration of the Plan which entitles the plaintiffs to a copy of the list of Plan participants." *Id.* at ¶ 16.

The district court again dismissed. Order of Dismissal, filed Feb. 9, 1993, at 8–9. The court quoted its 1991 Order of Dismissal, noting that the test it had used then—whether the request for information related to " 'provid[ing] benefits to plan participants . . . or defray[ing] reasonable expenses,' "— was the test "subsequently adopted in *Acosta*." *Id.* at 3 (quoting Order of Dismissal, filed July 9, 1991). The court went on to say that "[Retirees'] inconsequential amendments likewise fail to bring their first amended complaint within the test set forth in *Acosta*." *Id.* at 5. The court reasoned that the Retirees were not seeking "information about the provision of benefits from the Plan," *id.* at 6–7, but rather "access to others to solicit financial support for their related case in which they hope to obtain the Plan's surplus assets." *Id.* at 6. The district court conclud-

ed that § 404(a)(1)(A) did not require disclosure of the list because the list itself provides no information or access to information related to the provision of benefits or the defrayment of expenses. *Id.*

On appeal, the Retirees argue that the district court misapplied the *Acosta* test. They contend that the issue is not whether the information itself relates to the provision of benefits, as the district court had reasoned, but rather whether the Retirees' *asserted purpose* in requesting the information relates to the provision of benefits. The Retirees maintain that their purpose relates to the provision of benefits because they seek the list in order to communicate with other retirees about joining together in an effort to obtain greater benefits.

Our three-judge panel reversed the district court. *Hughes*, 39 F.3d at 1007. According to the panel, the district court incorrectly "focused on the *information* the list provides rather than the Retirees' *purpose* for seeking it. . . . [Under *Acosta*] [o]nly the Retirees' purpose for wanting the list, not the list itself, must relate to the provision of benefits." *Id.* at 1006–07 (emphasis in original). Thus the panel agreed with the Retirees that the focus of the inquiry should not be the nature of the information but the Retirees' asserted purpose. The panel concluded:

> Access to the list *could help* the Retirees to secure what they perceive to be their rights under the Plan. This connection between the requested list and the "provision of benefits" satisfies our test in *Acosta*. Therefore, the Administrator had a fiduciary duty to disclose the list.

*Id.* at 1006 (emphasis added).

In using a subjective test—the Retirees' asserted purpose for requesting the information—rather than an objective test— the nature of the requested information itself—the panel misread and misapplied *Acosta*. In *Acosta*, the inquiry was "whether *the disclosure* requested . . . is sufficiently related to the provision of benefits or the defrayment of expenses." *Acosta*, 950 F.2d at 619 (emphasis added). In using an objective test, *Acosta* is firmly grounded in the lan-

guage of § 404(a)(1)(A), which provides that the fiduciary shall discharge his duties "for the exclusive purpose of: (i) providing benefits ... and (ii) defraying reasonable expenses...." 29 U.S.C. § 1104(a)(1)(A). We follow *Acosta* in holding that any disclosure duty that § 404(a)(1)(A) imposes on fiduciaries is limited to the disclosure of information that relates to the provision of benefits or the defrayment of expenses, which are the exclusive purposes for which an ERISA fiduciary may discharge its duties.

In focusing on the requestor's asserted purpose, the panel fashioned a subjective test that is unworkable. There is no practical way of limiting the use of the information, once it is disclosed, to the purpose asserted by the requestor. Indeed, there is no way of assuring that the information will not be used by the requestor for other purposes, or, for that matter, will not be used by third parties who manage to obtain the information once it has been disclosed to a plan participant. In the context of requests under the Freedom of Information Act, the Supreme Court has said that the question of disclosure "cannot turn on the purposes for which the request for information is made." *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 771, 109

S.Ct. 1468, 1480, 103 L.Ed.2d 774 (1989). Instead, disclosure "must turn on the nature of the requested document...." *Id.* at 772, 109 S.Ct. at 1481. The logic of this rule is compelling for two reasons: (1) There is no practical way to restrict a requestor's use of information to the purpose asserted in the request; and (2) there is no practical way of assuring that the information disclosed will not fall into the hands of others. In sum, we accept our *Acosta* panel's objective test; we reject our *Hughes* panel's subjective test.

We fail to see any basis for distinguishing this case from *Acosta*. *Acosta* reasoned that "benefit" refers to "a participant's or beneficiary's right to receive monies from the plan administrator or trustee." *Acosta*, 950 F.2d at 619. If the right to solicit votes to elect directors who might vote for greater pension benefits is not a "benefit" for purposes of § 404(a)(1)(A), then neither is the right to solicit support for litigation that might result in greater pension benefits. In both *Acosta* and this case, the requested information about fellow participants does not relate to the provision of benefits or the defrayment of expenses. Accordingly, we hold that § 404(a)(1)(A) does not require a plan administrator to furnish individual participants with the names and addresses of other participants upon request.[6]

---

**6.** We are unpersuaded by the Retirees' argument that the common law of trusts imposes a duty in these circumstances on the Plan Administrator to disclose the names and addresses of other participants as beneficiaries of the Plan. The Retirees rely on *Acosta,* but *Acosta* merely assumed the existence of such a duty at common law without citing any authority on the issue. *See Acosta,* 950 F.2d at 619.

The other cases relied on by the Retirees also fail to support the proposition that a trustee has a general common law duty to disclose the names and addresses of trust beneficiaries:

First, *Corum Management Co. v. Aguayo Enters., Inc.,* 755 S.W.2d 895, 900 (Tex.Ct.App. 1988), is a statutory, not a common law, case. The statute required plaintiffs bringing an action against a trustee to notify trust beneficiaries, and mandated disclosure of the beneficiary list to plaintiffs for the purpose of permitting them to fulfill this statutory requirement.

In *Baydrop v. Second Nat'l Bank,* 120 Conn. 322, 180 A. 469 (1935), the court held that bene-

ficiaries of a trust were entitled to the names and addresses of co-beneficiaries only because they needed to obtain the co-beneficiaries' consent in an action to assume control of the trust corpus. *Id.* 180 A. at 472. *Baydrop* is thus not relevant to the duties of an ERISA plan fiduciary because no such action is available to ERISA plan participants.

In *Morris v. Broadview, Inc.,* 338 Ill.App. 99, 86 N.E.2d 863 (1949) (citing *Morris v. Broadview, Inc.,* 328 Ill.App. 267, 65 N.E.2d 605, 607 (1946)), the court held that beneficiaries in a voting trust were entitled to the names and addresses of their co-beneficiaries to enable them to solicit their co-beneficiaries' votes. *Id.* 86 N.E.2d at 866. Thus, *Morris* offers no authority for the imposition of a disclosure duty on the Plan Administrator because the Hughes retirement plan is not a voting trust and Plan participants have no votes to be solicited.

In *Sobel v. Bess,* 49 A.D.2d 591, 373 N.Y.S.2d 513 (1975), the court ordered the defendant, as receiver of certain property from a dissolved partnership, to hold the property in trust and to

The panel itself failed to identify a meaningful nexus between the information requested by the Retirees and the provision of benefits or defrayment of expenses. It held that the *Acosta* test was satisfied merely because the disclosure "could help" participants achieve some benefits-related purpose. *Hughes*, 39 F.3d at 1006. Surely this analysis stretches the *Acosta* test too far. As a practical matter, participants could always assert that a requested disclosure "could help" them achieve some benefits-related purpose by asserting—as Retirees do here—that the information requested "could help" participants monitor the administration of the plan by a self-appointed watch-dog committee.

In any case, since a participant list will not provide the Retirees with any information about the Plan, we fail to see how the list, or the access to other participants that it would facilitate, will aid in monitoring the Plan's management. The Retirees' argument that "[u]nless retirees can communicate with one another and organize to protect their rights under ERISA and under the plan, they will not be able to raise the support needed to enforce their rights against a well-funded pension plan," Appellants' Br. at 15, is unavailing. As this argument makes clear, the Retirees want to use the list to solicit financial support for future litigation. Congress has provided for recovery of costs and attorneys' fees under ERISA § 502(g), 29 U.S.C. § 1132(g), and we find nothing in ERISA suggesting that Congress intended to help plan participants amass a litigation war chest by soliciting donations from other plan participants and beneficiaries.

In deciding that § 404(a)(1)(A) does not require disclosure of the names and addresses because they are not related to the provision of benefits, we avoid a question of statutory construction discussed, but not decided, in *Acosta*: Whether § 404(a)(1)(A), a general ERISA provision, may be interpreted to require the disclosure of documents that relate to the provision of benefits or the defrayment of expenses but are not documents required to be disclosed under § 104(b)(4), ERISA's specific disclosure provision. In other words, may the general provision be interpreted in a way that expands the requirements of the specific provision? The *Acosta* panel speculated that a fiduciary's duties under § 404(a)(1)(A) "may in some circumstances extend to additional disclosures" beyond those specified in ERISA § 104.[7] *Acosta*, 950 F.2d at 618. The Administrator argues that to interpret § 404(a)(1)(A) as requiring the disclosure of documents not required to be disclosed by § 104(b)(4) would effectively "supplant ERISA's existing reporting and disclosure provisions." Pet. for Reh'g at 13. We need not address this question of the relationship between § 104(b)(4) and § 404(a)(1)(A), however, because disclosure of the names and addresses of plan participants is not required by either § 104(b)(4) or § 404(a)(1)(A). The question would arise only if the documents were not disclosable under § 104(b)(4) but were arguably disclosable under § 404(a)(1)(A) because they were related to the provision of benefits or the defrayment of costs. Because we need not decide this question of statutory interpretation, we need not consider the concerns raised by the Administrator and the *amici*

---

furnish a list of trust beneficiaries to the plaintiff, as a beneficiary and former general partner. However, the order was reversed on other grounds. *Sobel v. Bess*, 43 N.Y.2d 969, 404 N.Y.S.2d 595, 595–96, 375 N.E.2d 775, 775–76 (1978).

Finally, the Retirees cite George Gleason Bogert, *The Law of Trusts and Trustees* § 961 (Rev.2d ed. 1983). That treatise adds nothing, however, because it relies solely on *Baydrop* and *Morris*.

In sum, the Retirees cite no substantial authority for the proposition that the common law imposes a duty on a trustee to disclose names

and addresses of beneficiaries to all other beneficiaries, at least in the absence of special circumstances such as voting rights or the need to obtain other beneficiaries' consent to initiate litigation.

7. The holding of *Acosta* was that there was no duty to disclose under § 404(a)(1)(A) because the documents did not relate to the provision of benefits or the defrayment of expenses. *Acosta*, 950 F.2d at 619. It was therefore unnecessary for the *Acosta* panel to reach the question whether the duties under § 404(a)(1)(A) "may in some circumstances extend to additional disclosures," i.e., to documents that are not § 104(b)(4) docu-

about privacy[8] and costs[9] that would attend the disclosure of names and addresses of plan participants. Balancing such concerns on the one hand with the policy interests served by disclosure on the other is, of course, best left to Congress—particularly when the conflicting concerns and interests arise in an area of the law Congress has chosen to regulate with painstaking detail. *See Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980) (ERISA is a "comprehensive and reticulated statute").

In sum, we hold that ERISA § 404(a)(1)(A) does not require plan administrators to disclose the names and addresses of plan participants to other participants upon request because the disclosure would not provide information that is related to the provision of benefits or the defrayment of expenses.

## CONCLUSION

The opinion of the original panel, 39 F.3d 1002, is VACATED, and the judgment of the district court dismissing the action for failure to state a claim under either ERISA § 104(b)(4) or ERISA § 404(a)(1)(A) is AFFIRMED.

PREGERSON, Circuit Judge, joined by HUG, FLETCHER, and REINHARDT, Circuit Judges, dissenting:

The Retirees of the Hughes Non–Bargaining Retirement Plan seek a list of the names and addresses of plan participants for two purposes: (1) to communicate with other plan participants about increasing benefits from the plan's $1 billion of surplus funds, and (2) to create a watchdog committee to ensure that the Administrator properly manages the plan. I dissent on two independent bases: I believe that the Administrator has a duty to furnish such a list under ERISA §§ 404(a)(1)(A) (the general fiduciary duty provision) and 104(b)(4) (as a plan instrument).

### A. ERISA § 404(a)(1)(A)

ERISA § 404(a)(1)(A) provides that the Administrator, as a fiduciary to the plan, must discharge his duties of plan administration "solely in the interest of the participants and beneficiaries and—(A) for the exclusive

---

ments, but nonetheless relate to the provision of benefits or the defrayment of expenses.

**8.** The *amici* express concern about privacy interests. *See* Br. of Amicus Curiae Western Conference of Teamsters, at 4–5 (disclosure would expose plan participants to harassment, emotional abuse, and sharp solicitation practices); Br. of Amici Curiae Hughes Aircraft Retirees Ass'n and Hughes Employees Ass'n, at 13–14 (mailing list would become the subject of commercial exploitation, leading to telemarketing calls and other forms of solicitation that *amici* seek to avoid). The Supreme Court has recognized in the Freedom of Information Act context that individuals have a heightened privacy interest in their home addresses. *United States Dep't of Defense v. Federal Labor Relations Auth.*, —— U.S. ——, ——–——, 114 S.Ct. 1006, 1015–16, 127 L.Ed.2d 325 (1994) ("when we consider that other parties, such as commercial advertisers and solicitors, must have the same access … to the employee address lists sought in this case, it is clear that the individual privacy interest that would be protected by nondisclosure is far from insignificant") (citation omitted); *see also Painting Indus. of Haw. Market Recovery Fund v. USAF*, 26 F.3d 1479, 1486 (9th Cir.1994) (Norris, J., concurring) ("The invasion of privacy that results from disclosure of one's home address is far more substantial than, say, the disclosure of one's phone number [because] home addresses are not routinely available."). Moreover, privacy interests "become[] more significant … when names and addresses are combined with … financial information," such as the fact that the persons are pensioners receiving monthly annuity checks from the same employer. *National Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 876 (D.C.Cir.1989). "Armed with this information, interested businesses, charities, and individuals could, and undoubtedly would, subject the listed [pensioners] 'to an unwanted barrage of mailings and personal solicitations.'" *Id.* (citation omitted).

**9.** The *amici* also express concerns regarding administrative costs that a plan could incur if § 404(a)(1)(A) were interpreted to create a fiduciary duty to disclose the names and addresses of plan participants. *See* Br. of Amicus Curiae Western Conference of Teamsters, at 6–7 (printing a mailing list involves significant costs, which rise substantially when the list requested is a tailored list, *e.g.*, a list of names and addresses of participants who have received benefits under a particular plan provision); Br. of Amici Curiae Hughes Aircraft Retirees Ass'n and Hughes Employees Ass'n, at 14 (when request is made pursuant to general fiduciary duties of § 404(a)(1)(A), no provision allows costs to be passed on to requestor).

purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan...."

In *Acosta v. Pacific Enterprises*, 950 F.2d 611, 619 (9th Cir.1991), we held that a plan administrator did not have a duty to disclose a list of participants' shareholdings because "there is not a sufficient nexus between ... the list ... for the *purpose* of soliciting votes and the provision of benefits or defrayment of expenses." We explained that the term "benefit" refers to a participant's right to receive monies from the plan administrator, not the right to vote in an election for corporate officers. *Id.*

The purpose for which the Retirees seek the mailing list is directly related to their right to receive monies from the plan Administrator. The list will enable the Retirees to communicate with other plan participants about increasing benefits from the plan's surplus funds of more than $1 billion, and to create a watchdog committee to ensure that the Administrator properly manages the plan.

The majority opinion misreads *Acosta* as requiring a nexus between the *disclosure* requested and the provision of benefits. In *Acosta*, we made clear that the disclosure of the list could have been required if the purpose for which the list would be used was sufficiently related to the provision of benefits. *Id.* ("[T]here is not a sufficient nexus between ... [the] list ... *for the purpose of soliciting votes in a proxy contest* and the provision of benefits...."). Following *Acosta*, the original panel narrowly limited its holding by emphasizing that administrators do not have a fiduciary duty to disclose a list of plan participant names and addresses "as

a matter of course in every case." *Hughes v. Administrator*, 39 F.3d 1002, 1007 (9th Cir. 1995).

The majority opinion notes that in the context of disclosure requests under the Freedom of Information Act, the Supreme Court in *United States Dep't of Justice v. Reporters Committee*, 489 U.S. 749, 771, 109 S.Ct. 1468, 1480, 103 L.Ed.2d 774 (1989), stated that disclosure "cannot turn on the purposes for which the request for information is made." But in *Reporters Committee*, the Court went on to say that whether disclosure was warranted "must turn on the nature of the requested document and its relationship to *the basic purpose* of the Freedom of Information Act to open agency action to the light of public scrutiny." *Id.* at 772, 109 S.Ct. at 1481. *See also United States Dep't of Defense v. Federal Labor Relations Authority*, —— U.S. ——, ——, 114 S.Ct. 1006, 1013, 127 L.Ed.2d 325 (1994) (disclosure of employees' home addresses would not appreciably further "the citizens' right to be informed about what their government is up to").[1]

In the instant case, the disclosure of the list of plan participants would directly advance the very purposes Congress had in mind when it enacted ERISA's disclosure provisions. Section 404(a)(1)(A) requires a fiduciary to furnish all information to the extent that the request "relate[s] to" the provision of benefits, and § 104(b)(4) requires a fiduciary to furnish all "plan instruments." As discussed above, Congress intended for these disclosure provisions to help beneficiaries secure benefits to which they may be entitled, and to enable them to better police the administration of their plan.[2]

---

1. In any event, *Reporters Committee* and other FOIA cases are of limited guidance because FOIA, which requires full agency disclosure, is limited by an exemption clause: disclosure is not required if it would constitute "a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). ERISA contains no such limitation on the fiduciary's duty to disclose plan instruments or documents that relate to the provision of benefits.

2. In *Acosta* we noted that:

   ERISA's legislative history demonstrates that "Congress invoked the common law of trusts

to define the general scope of [a fiduciary's] authority and responsibility." The language of section 404(a) reflects this congressional intent that common law trust principles animate the fiduciary responsibility provisions of ERISA.

*Acosta*, 950 F.2d at 618 (citations omitted). Thus, I refer to the general law of trusts to conclude that the ERISA administrator has a duty to make available the names and addresses of beneficiaries to all other beneficiaries. *See* George Gleason Bogert, *The Law of Trusts and Trustees* § 961 (Rev.2d ed. 1983).

Finally, the majority opinion is based on an unfounded fear of the list falling into "the wrong hands." The majority opinion states that there is no practical way to restrict a requestor's use of information to the purpose asserted, and that there is no practical way of preventing third parties from exploiting the list for commercial or other improper purposes.

There are at least three ways to protect the list. First, the Administrator can prevent the Retirees from misusing the list by requesting the court to issue an appropriate protective order. Second, the Administrator can prevent the list from falling into the wrong hands by doing the mailing for and at the expense of the Retirees. Third, the Administrator can prohibit improper use of the list as one of the terms of the plan, and then use the Administrator's powers to enforce the prohibition under ERISA § 502(a)(3) (fiduciary may enjoin any act or practice which violates terms of plan).

Invasion of privacy need not be an issue here, but for the Administrator's unwillingness to cooperate with the Retirees. The Retirees informed the Administrator that the list need not be turned over to them, and that they would pay any expenses that the Administrator incurred to mail the necessary information to the plan participants. This offer the Administrator rejected.

## B. ERISA § 104(b)(4)

The majority opinion concludes that a list of the names and addresses of plan beneficiaries does not qualify as a "plan instrument" under ERISA § 104(b)(4). The majority opinion reasons that the disclosure duties of the Administrator extend only to those documents specifically enumerated in § 104(b)(4), and other documents that are similar to those listed in that section.

But as the original panel found, neither the statutory text nor the legislative history of § 104(b)(4) support such a narrow construc-

tion of the term "plan instrument." *Hughes,* 39 F.3d at 1008. Indeed, both the text and legislative history indicate that Congress contemplated "plan instrument" to include the kind of list that the Retirees seek.

Section 104(b)(4) requires the disclosure of "other instruments under which the plan is established or operated." The mailing list is necessarily an instrument under which the plan is operated because without it, an administrator could not possibly pay benefits or keep plan participants informed of plan administration. The purpose for which the Retirees seek the list, to police the administration of the plan, is precisely one of the reasons why Congress enacted § 104(b)(4). The Senate Committee on Labor and Public Welfare explained that the disclosure requirements were intended to improve the quality of information participants receive about the operation of their plan, and thus enable them to better police the plan:

Disclosure ... impart[s] to employees sufficient information and data to enable them to know whether the plan [i]s financially sound and *being administered as intended* .... [T]he information disclosed would enable employees *to police their plans....* [There is] a need for more particularized form of reporting so that the individual participant knows exactly where he stands with respect to the plan—*what benefits he may be entitled to* .... [T]he fiduciary responsibility section will operate efficiently only if fiduciaries are aware that ... their dealings will be open to inspection and the ... beneficiaries will be armed with enough information *to enforce their own rights as well as the obligations owed by the fiduciary to the plan in general.*

S.Rep. No. 127, 93d Cong., 2d Sess. (1973), *reprinted in,* 1974 U.S.C.C.A.N. 4838, 4863 (emphasis added).

The majority opinion argues that the test articulated by the original panel—whether a document is critical to the operation of the plan—"admits of no limiting principle." The

The majority opinion quickly distinguishes some of the cases that undergird the common law principle that trustees must provide beneficiaries with the information necessary to police the trust. Following its brief survey of the common law of trusts, the majority concludes that

the common law only requires disclosure under "special circumstances." I believe the majority avoids the critical question: Does such a special circumstance exist when ERISA beneficiaries seek to police the trust? Given the unequivocal legislative history on this issue, I believe it does.

majority opinion incorrectly hypothesizes that documents such as medical histories and wage records would be subject to disclosure because those documents are necessary to the operation of an ERISA plan. However, medical histories and wage records would not qualify as a plan instrument because they do not in any way serve the purposes for which Congress enacted § 104(b)(4): to enable beneficiaries to enforce their rights and police the administration of the plan. Thus, contrary to the majority opinion's assertion, the test established by the original panel is narrowly circumscribed by the additional criterion of whether the document is crucial to the enforcement of plan benefits.

The majority opinion also relies on *Curtiss–Wright Corp. v. Schoonejongen*, —— U.S. ——, ——, 115 S.Ct. 1223, 1231, 131 L.Ed.2d 94 (1995), for the proposition that § 104(b)(4) only requires the disclosure of "governing plan documents," and that a mailing list clearly does not fall in this category. *Curtiss–Wright* involved the adequacy of a company's procedure for amending its employee benefit plan. The Supreme Court did not rule in any way on the question presented in the instant appeal, which involves the disclosure requirements of an ERISA fiduciary.

To the extent that the Court discussed § 104(b)(4), it did so only to make its point that because § 104(b)(4) would require the disclosure of any new amendments to the plan, it obviated the need for a separate notice requirement. Moreover, although the Court characterized the documents to be disclosed under § 104(b)(4) as "governing plan documents," it did not define what constituted such documents, but only decided that a new amendment to the plan was a governing plan document.

### CONCLUSION

The holding of the original panel is narrow and tailored to its particular facts. Congress intended for both ERISA §§ 404(a)(1)(A) and 104(b)(4) to equip beneficiaries with the necessary information to enforce their rights, particularly in securing benefits to which they may be entitled. The list of plan participants unquestionably effectuates these ob-

jectives in the circumstances of this case. Accordingly, I dissent.