26 F.3d 486
 18 Employee Benefits Cas. 1439
 Robert Q. ALIFF; Michael R. Blackburn; Roger L.
Blankenship; James A. Bowers, Jr.; Clifton W. Brown;
Daniel J. Casey; James M. Charles; Jerry D. Cisco; Jerry
M. Cisco; Trellis H. Cisco; Harold Coleman; Irvin C.
Dean; Eddie M. Dillon; James W. Donahoe; Peter R.
Eisenman; Clifton L. Frye; Ward Gartin; George E. Hager;
Oliver Harris, Jr.; John Hatfield; John R. Hill; Joseph
H. Ibos; Ronald L. Kennedy; Donald Mahon; Ronald Mahon;
Paul D. Matney; Randall E. May; James A. Maynard; Rhonda
R. Maynard; Robert R. McClanahan; Thomas E. Moore; James
M. Osborne; Wallace Perry; Gilbert W. Rowe; Dallas T.
Runyon; Tommy L. Sammons; Charles E. Slone; Charles D.
Smith; Larry S. Smith; Lora J. Stuart; Roger L. Swiney;
Darlene Varney; James M. Wesley, Plaintiffs-Appellants,
v.
BP AMERICA, INCORPORATED, a Delaware corporation; BP
America, Incorporated, in its capacity as Plan Administrator
of that certain ERISA employee welfare benefit plan
described herein; D.R. Duckworth, in his personal capacity
and in his capacity as Plan Administrator of that certain
ERISA employee welfare benefit plan described herein; That
Certain ERISA Employee Welfare Benefit Plan Described Herein
and Referred to as the BP America, Inc. Involuntary
Separation Program in the Plan Documents; BP Coal,
Incorporated, a Delaware corporation, Defendants-Appellees,
and
Dennis R. Bankowski, in his personal capacity and in his
capacity as Plan Administrator of that certain ERISA
employee welfare benefit plan described herein; P. S.
McAuliffe, in his personal capacity and in his capacity as
Plan Administrator of that certain ERISA employee welfare
benefit plan described herein, Defendants.
 No. 93-2050.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 9, 1994.
Decided June 8, 1994.
 
 ARGUED: John Francis Dascoli, Segal & Davis, L.C., Charleston, WV, for appellants. Charles M. Surber, Jr., Jackson & Kelly, Charleston, WV, for appellees. ON BRIEF: Gretchen O. Lewis Chaffin, H. Truman Chaffin, Williamson, WV, for appellants. Michael D. Foster, Jackson & Kelly, Charleston, WV, for appellees.
 Before HALL and MURNAGHAN, Circuit Judges, and RONEY, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Forty-three former employees of BP America, Inc., (BP) appeal the order granting summary judgment to BP in the employees' action to recover severance benefits under a plan established by BP. We affirm.
 
 
 2
 * In May, 1990, BP established an Involuntary Separation Plan (ISP) to provide severance benefits for employees who might be displaced as a result of an anticipated sale of a BP subsidiary, Old Ben Coal Company (Old Ben). On July 20, 1990, Old Ben was sold to Zeigler Coal Holding Company. The contract of sale called for Zeigler to maintain employee benefit plans that would be "substantially comparable in the aggregate" to BP's plans then in force. Three days later, BP's Director of Benefits mailed copies of the ISP to the affected employees.
 
 
 3
 To be eligible for severance benefits under the ISP, an Old Ben employee had to be "displaced." A "displaced employee" was defined as one to whom BP or Zeigler offered a job that was "not at an equivalent level of compensation to your job with [BP]" and the employee either (1) did not accept the job or (2) accepted the job with Zeigler but resigned within thirty days. The plan informed each employee that "[y]ou may request an advance determination of your eligibility under this provision through your Human Resources representative in Cleveland, Ohio." The plan provided that
 
 
 4
 "equivalent level of compensation" shall be determined by the BP Plan Administrator or his designee, taking into account the estimated aggregate value of base pay, incentive compensation, savings plan, pension, medical, dental, life insurance, short term disability, and long term disability.
 
 
 5
 In the letter accompanying the copy of the plan, BP's Director of Benefits informed the employees that the "equivalent level of total compensation" question had been determined:
 
 
 6
 Based upon a review of the applicable BP America and Zeigler employee benefits programs, it has been determined that, in the aggregate, they are substantially equivalent. Accordingly, this last provision would potentially apply to employees transferring to Zeigler only if their base salary ... is reduced from the level in effect at the close.
 
 
 7
 All the plaintiff-employees accepted jobs with Zeigler at the same base salaries.
 
 
 8
 Many of the employees promptly complained that the Zeigler benefits were lower in several areas. On August 8, 1991, they asked for information on how the equivalency determination had been made. They also asked for additional time to make resignation decisions in order to toll the running of the thirty-day period.
 
 
 9
 On August 20, in response to the inquiries, BP Benefits Director McAuliffe, who had been designated by the plan administrator to make the equivalency determination, notified the employees that the comparison was made on an aggregate rather than an individual basis. The comparison was based on the sales agreement, the two companies' benefits programs, and a report from an actuary. Any individual review would be limited to whether each employee had been employed by Zeigler at "an equivalent base salary." Requests for copies of the actuary report were denied.
 
 
 10
 By its terms, the Plan expired on July 20, 1991. No employee had availed himself of the appeal procedure set forth in the Plan.
 
 
 11
 This action was filed on April 29, 1992, and contained a variety of state and federal claims. In awarding summary judgment to the defendants, the district court ruled that the state law claims were preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1001 et seq. With regard to the primary ERISA claims, the court found that the ISP did not mandate an employee-by-employee equivalency analysis and that "substantially comparable" standard used by the actuary was in accordance with the Plan standard of "equivalent level." The court also determined that the July 23 and August 20 letters served as adequate "advance determinations" of benefits. The court also posited an alternative basis for denying the claim--none of the plaintiffs had resigned before the expiration of the thirty-day period. Finally, the district court ruled that ERISA did not require BP to disclose the requested actuarial report.
 
 
 12
 All forty-three plaintiffs appeal.
 
 II
 
 13
 The employees' common law claims allege that BP, in an effort to induce the employees to stay with Old Ben and thereby maintain its value as a going concern, misled the employees to their detriment. But for these misrepresentations, the employees assert, they might have relocated to other jobs with better pay and benefits but for the assurance of either a comparable job with Zeigler or a good severance benefit package from BP.
 
 
 14
 ERISA preempts all state laws that "relate to any employee benefit plan." 29 U.S.C. Sec. 1144(a). The preemptive scope is broad, and any state law that has a "connection with or reference" to a benefit plan is preempted. Shaw v. Delta Air Lines, 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2899-2900, 77 L.Ed.2d 490 (1983). The district court concluded that "all state based claims involve the administrator's denial of severance benefits." Aliff v. BP America, Inc., 826 F.Supp. 178, 185 (S.D.W.Va.1993). We affirm the summary judgment with regard to the state law claims (claims 1-5) for the reasons stated by the district court in its memorandum opinion. Id. at 184-85.*
 
 III
 
 15
 When an employee benefit plan clearly gives the plan administrator the discretion to interpret the language of the plan, the usual standard of review of the administrator's interpretation is for abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). The ISP conferred broad powers upon the Administrator to interpret the plan's language:
 
 
 16
 The BP Plan Administrator, or his designee, shall have the sole and exclusive discretion and authority to apply, construe, and interpret this provision of the Program and make such determination of equivalent level of total compensation. The determination of the Plan Administrator shall be final and binding.
 
 
 17
 However, the Plan Administrator's designee for interpretation of the ISP's provisions was McAuliffe, BP's Director of Benefits and a BP shareholder, and the employees claim that the district court used too deferential a standard of review because too little emphasis was placed on McAuliffe's alleged conflict of interest. In Doe v. Group Hospitalization, 3 F.3d 80, 87 (4th Cir.1993), we held that in the case of a conflict of interest where one interpretation will further the financial interests of the fiduciary, any deference "will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict." Although the order on appeal predated Doe by a little more than a month, the district court anticipated Doe 's holding.
 
 
 18
 Doe worked no sea change in the law with regard to the standard of review of fiduciaries' interpretation of disputed terms of benefit plans. A conflict of interest had been noted as a factor to be considered in Firestone, 489 U.S. at 115, 109 S.Ct. at 956, and this factor had been echoed by this court in two opinions cited by the district court in the instant case, de Nobel v. Vitro Corp., 885 F.2d 1180, 1191 (4th Cir.1989), and Bidwill v. Garvey, 943 F.2d 498, 508 (4th Cir.1991). The district court concluded that any conflict was "outweighed" by McAuliffe's reliance on the actuary report and by the detailed findings in McAuliffe's own July 23 memorandum. Aliff, 826 F.Supp. at 186. We agree. Moreover, inasmuch as support for the fiduciary's decision does not depend to any appreciable degree on deference, we reject the appellants' contention that Doe dictates a different result in this case.
 
 IV
 
 19
 Regardless of the degree of deference due to the administrator, the employees argue that the interpretation is plainly at odds with the language of the ISP. The argument is that the ISP expressly stated that "you may request an advance determination of your eligibility under the [equivalent compensation] provision" and that the plan referred to the equivalency in "your job['s]" compensation. The issue, then, is whether the plan administrator's decision--to compare the nonsalary benefits of BP and Zeigler in the aggregate, to use a "substantially comparable" standard, and to deny individualized comparisons--violated the ISP. We hold that it did not.
 
 
 20
 The crux of the employees' argument is that the ISP mandated the administrator to make a detailed comparison of the value of each employee's benefits package. The ISP does not plainly require such an employee-by-employee comparison, but the employees point to the ISP provision that an employee was eligible if the Zeigler job was "not at an equivalent level of compensation to your job with [BP] immediately prior to [July 23, 1991]" (emphasis added). Section II-B permits the administrator to determine "equivalency" on the basis of "the estimated aggregate value of base pay, incentive compensation, ..." etc., and the employees contend that this refers back to the language about "your job" being equivalent. While individualized reviews of the sort contended for by the employees do not appear to contravene the terms of the ISP, we agree with the district court that this interpretation is not plainly mandated. We also agree with the district court's conclusion that the administrator's decision to compare the apples and oranges of the various benefit plans in the aggregate was not an abuse of discretion on his part.
 
 
 21
 Summary judgment with respect to the remainder of the claims is affirmed for the reasons stated in the district court's opinion. Aliff, 826 F.Supp. 178.
 
 
 22
 AFFIRMED.
 
 
 
 *
 Although the plaintiffs argue that their state law claims are premised on allegedly fraudulent representations "during the year which preceded the sale [of Old Ben]," there is no support in the record for these claims beyond the bare allegations in the complaint