Affirmed in part, reversed in part and remanded by published opinion. Judge HAMILTON wrote the opinion, in which Judge WILLIAMS joined. Judge MICHAEL wrote a separate opinion concurring in part and dissenting in part.
OPINION
HAMILTON, Circuit Judge:
Janice Fay Faireloth, Evelyn D. Frederick, and Callweall W. Smiling (the Appellants), three participants in the employee stock ownership plan (the ESOP) of Lundy Packing Company (Lundy), brought this action against Lundy, which is the ESOP’s administrator, and Annabelle L. Fetterman and Mabel F. Held, who are the ESOP’s trustees. The Appellants alleged that Lundy, Fetter-man, and Held violated provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, by refusing to furnish certain documents to the Appellants. On October 12, 1994, the district court granted partial summary judgment in favor of Lundy, Fetterman, and Held. On January 20, 1995, the district court granted summary judgment in favor of the Appellants on their remaining claims and imposed penalties on Lundy for its refusal to furnish some of the documents to the Appellants. The Appellants appeal both orders.[1] We affirm in part, reverse in part, and remand with instructions.
I.
Lundy, a North Carolina closely held corporation that sells pork products, established the ESOP in 1976. Lundy employees who have completed one year of employment with Lundy are eligible to participate in the ESOP. The ESOP provides benefits to participants upon defined events, such as retirement. Lundy maintains an account for each participant and provides each participant with an annual statement of her or his account. The amount of a participant’s benefits under the ESOP is based on the participant’s account balance.
The majority of the assets of the ESOP are invested in Lundy stock. An independent appraiser values Lundy stock and provides Lundy with an appraisal report on an annual basis. Lundy uses the valuation contained in the annual appraisal reports in calculating the account balances of ESOP participants.
In 1992, the Appellants received statements of account showing that the value of Lundy stock declined by approximately 42% between June 1991 and July 1992 and that their account balances had dropped as a result. When the Appellants received these statements of account, the United Food and Commercial Workers Union (the Union) was conducting an organizational campaign at Lundy. Concerned about the drop in their account balances, the Appellants turned to a Union representative for assistance in determining why the value of Lundy stock had declined. The Union then prepared identical letters, dated March 23, 1993, that each of the Appellants signed, requesting the following documents from Lundy in its capacity as plan administrator: .(1) the plan document; (2) the trust agreement; (3) the latest summary plan description (SPD); (4) any other rules and regulations governing the ESOP; (5) the last three annual reports (Form 5500s); (6) the last three audited financial statements for the ESOP; (7) the last three summary annual reports; (8) the last three summaries of material modifications; (9) any contracts between the ESOP and any third party, including insurance contracts and contracts with custodians of assets and investment managers; (10) any policies adopted by the ESOP’s fiduciaries, including any invest *652 ment policy, trustee expense policy, cost-sharing policy, and funding policy; (11) any insurance policy and/or bonding policy covering the ESOP and its fiduciaries; (12) minutes of any meeting regarding the ESOP during the last three years; (13) the last IRS determination of tax qualification for the ESOP; and (14) the results of discrimination tests under I.R.C. §§ 401(k) and 401(m).
On April 19, 1993, after reviewing the requests with Fetterman, Held notified the Appellants that Lundy would only provide them with the plan document, the trust agreement, the latest SPD, and the last three summary annual reports. Held also informed the Appellants that no summaries of material modifications existed and asked the Appellants to clarify requests nine, ten, and twelve. The Appellants never provided a clarification of these requests.
On May 25, 1993, the Appellants sent Lun-dy another letter — this time requesting all appraisal reports regarding Lundy stock and “any and all documents concerning [Lundy’s] financial status and operations supplied to the person or entity that prepared each appraisal or valuation report[ ].” (J.A. 42). Two days later, the Appellants filed this action against Lundy, Held, and Fetterman, claiming that they had violated ERISA by refusing to provide the documents requested in the March 23 letter.
On June 18,1993, Held, acting on behalf of Lundy, denied the Appellants’ May 25 requests, but informed the Appellants that upon further review of the March 23 requests, Lundy had determined that they were entitled to the last three Form 5500s. Accordingly, Held provided those documents to the Appellants. On July 21, 1993, the Appellants amended their complaint to allege that Lundy’s refusal to provide the documents requested on May 25 constituted an additional violation of ERISA.
After conducting discovery, both sides moved for summary judgment. On October 12, 1994, the district court granted partial summary judgment in favor of Lundy, Held, and Fetterman. The district court determined that the Appellants were not entitled to most of the documents they requested, but reserved judgment on whether the Appellants were entitled to copies of contracts with custodians of assets, investment managers, and insurers of plan assets. On January 20, 1995, the district court determined that the Appellants were entitled to these contracts and granted summary judgment in favor of the Appellants regarding these contracts. The district court also ordered Lundy to pay each Appellant $2500 as penalties for Lun-dy’s delay in furnishing the Appellants with the Form 5500s and for its failure to furnish the Appellants with the contracts with custodians of assets, investment managers, and insurers of plan assets. The Appellants appeal both of the district court’s orders, contending that the district court erred in determining that they were not entitled to certain documents they requested and in imposing insufficient penalties against Lundy.
II.
The Appellants argue that the district court erred in determining that they were not entitled to receive five sets of documents: (1) the last IRS determination of tax qualification; (2) the bonding policy covering the ESOP and its fiduciaries; (3) the appraisal reports and supporting documentation; (4) the minutes of meetings regarding the ESOP during the last three years; and (5) the investment, funding, cost-sharing, and trustee expense policies. They claim that they are entitled to these documents under three sections of ERISA: § 104(b)(4), § 404(a)(1)(A), and § 404(a)(1)(D). We shall address each of these provisions in turn.
A.
ERISA § 104(b)(4) provides:
The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary may by regulation prescribe the *653 maximum amount which will constitute a reasonable charge under the preceding sentence.
29 U.S.C. § 1024(b)(4) (emphasis added). In this case, we must interpret the meaning of the emphasized language and determine whether the emphasized language encompasses the documents requested by the Appellants.
When confronted with a question of statutory interpretation, our inquiry begins with an examination of the language used in the statute. See Stiltner v. Beretta U.S.A. Corp., 74 F.3d 1473, 1482 (4th Cir.1996). If the statutory language is clear and unambiguous, our inquiry ends there as well; we neither resort to an examination of the statute’s legislative history nor apply the traditional rules of statutory construction. Id. See Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917) (“[T]he rules which are to aid doubtful meanings need no discussion” when the statutory language is clear and unambiguous.).
Here, the statutory language “other instruments under which the plan is established or operated” is clear and unambiguous. “Instrument” means “[a] formal or legal document in writing, such as a contract, deed, will, bond, or lease_ Anything reduced to writing, a document of a formal or solemn character_” Black’s Law Dictionary 801 (6th ed.1990); see also Webster’s New World Dictionary 700 (3d college ed.1991) (defining “instrument” as “a formal document, [such] as a deed, contract, etc.”). “Establish” means “to order, ordain, or enact ... permanently” or “to set up.” Webster’s New World Dictionary at 465. “Operate” means “to conduct or direct the affairs of (a business, etc.); manage.” Id. at 949. Therefore, the language “other instruments under which the plan is established or operated” encompasses formal or legal documents under which a plan is set up or managed. The language at issue being unambiguous, we do not resort to an examination of ERISA’s legislative history nor apply the rules of statutory construction. See Stiltner, 74 F.3d at 1482.
Although the dissent does not even suggest that the language at issue is ambiguous, nor could it, it nonetheless heavily relies on ERISA’s legislative history in support of its unduly broad interpretation. As previously set forth, any reliance on ERISA’s legislative history in this case is prohibited. Id.
The Appellants and the Amici argue that § 104(b)(4) should be construed broadly to encompass any documents that would assist participants and beneficiaries in determining their rights under a plan and in determining whether a plan is being properly administered. They assert that other courts have interpreted § 104(b)(4) broadly.[2] But our examination of the two circuit court eases addressing the scope of § 104(b)(4) does not convince us that § 104(b)(4) should be construed broadly. See Hughes Salaried Retirees Action Comm. v. Administrator of the Hughes Non-Bargaining Retirement Plan, 72 F.3d 686 (9th Cir.1995) (en banc); Bartling v. Fruehauf Corp., 29 F.3d 1062 (6th Cir.1994).[3]
*654 In Bartling, the Sixth Circuit held that § 104(b)(4) encompassed an actuarial report required to be prepared by ERISA and a written calculation procedure used in deriving benefits under the plan. The court stated that “all other things being equal, courts should favor disclosure [under § 104(b)(4)] where it would help participants understand their rights.” Bartling, 29 F.3d at 1070. The court thus established a presumption of disclosure under § 104(b)(4). We find nothing in the clear and unambiguous statutory language to support such a presumption. Accordingly, we do not find Battling persuasive.
In Hughes, certain retirees requested the plan administrator to furnish them a list of the names and addresses of all retired participants in the plan so that they could communicate with the other retirees regarding the plan and obtain assistance in monitoring the plan. The plan administrator used the list in paying benefits. A panel of the Ninth Circuit held that § 104(b)(4) encompassed the list because it was “critical to the operation” of the plan. Hughes Salaried Retirees Action Comm. v. Administrator of the Hughes Non-Bargaining Retirement Plan, 39 F.3d 1002, 1007 (9th Cir.1994). During the pen-dency of the appeal in this ease, the Ninth Circuit, sitting en banc, rejected the panel’s interpretation of § 104(b)(4). The en banc court narrowed the broad interpretation of § 104(b)(4) adopted by the panel by stating:
[W]e decline to interpret § 104(b)(4) to require general disclosure, subject only to specified exceptions. On the contrary, § 104(b)(4) requires the disclosure of only the documents described with particularity and ‘other instruments’ similar in nature.
Hughes, 72 F.3d at 691. The en banc court further stated that “[t]he relevant documents are those documents that provide individual participants with information about the plan and benefits.” Id. at 690. Applying its interpretation of § 104(b)(4) to the document at issue in the case, the en banc court held that § 104(b)(4) did not encompass the list of retired participants because the list provided “no information about the plan or benefits.” Id.
We will not speculate on how the Ninth Circuit would apply its decision in Hughes to the facts of this case. We note, however, that if Congress had intended § 104(b)(4) to encompass all documents that provide information about the plan and benefits, Congress could have used language to that effect. Instead, Congress used language limiting § 104(b)(4) to “instruments under which the plan is established or operated.” The clear and unambiguous meaning of this statutory language encompasses only formal or legal documents under which a plan is set up or managed. To the extent that the Ninth Circuit’s interpretation of § 104(b)(4) encompasses documents other than those under which a plan is set up or managed, the interpretation is unsupported by the statutory language and therefore unpersuasive.
Having ascertained the proper interpretation of § 104(b)(4), we now apply that interpretation to the documents at issue in this case.
1.
The Appellants requested the IRS determination letter showing that the ESOP is tax-qualified.[4] The determination letter does nothing to set up or manage the ESOP. Accordingly, § 104(b)(4) does not encompass the determination letter.
2.
The Appellants also requested the bonding policy insuring the ESOP against fiduciary misconduct. Like the determination letter, the bonding policy does nothing to set up or manage the ESOP. Accordingly, § 104(b)(4) does not encompass the bonding policy.
*655 3.
The Appellants also requested “all appraisal reports or valuation reports of the Lundy Packing Company stock” and “any and all documents concerning Lundy Packing Company’s financial status and operations supplied to the person or entity that prepared each appraisal or valuation report[ ].” (J.A. 42). The ESOP is not set up or managed under these documents. The appraisal reports simply derive the value of Lundy stock, and the supporting documents included in this request provide the raw material from which the appraisal report is derived. Accordingly, § 104(b)(4) does not encompass the appraisal reports or their supporting documentation.
4.
The Appellants also requested “minutes of any meetings regarding the [ESOP] during the last three years.” (J.A. 30). According to the Department of Labor, certain minutes of trustees’ meetings may fall within § 104(b)(4). See, e.g., DOL Advisory Opinion Letter 87-010A (opining that § 104(b)(4) does not encompass minutes of a trustees’ meeting in which the trustees reviewed the performance of an investment manager, but does encompass minutes of a trustees’ meeting in which the trustees established a claim procedure); but see Chambless v. Masters, Mates & Pilots Pension Plan, 571 F.Supp. 1430, 1456 (S.D.N.Y.1983) (“Neither ERISA nor the federal regulations issued thereunder make any mention of any requirement that plan participants be allowed to see the minutes of trustees’ meetings or prior decisions by the trustees.”).
We need not decide whether trustees’ meeting minutes can ever constitute formal or legal documents under which a plan is set up or managed because here the Appellants’ request for meeting minutes was too broad to fall within § 104(b)(4) and the Appellants refused to clarify the request. See Anderson v. Flexel, Inc., 47 F.3d 243, 248 (7th Cir.1995) (holding that a request for documents under § 104(b)(4) necessitates a response from an administrator when it gives the administrator “clear notice” of the information sought). The Appellants’ request did not give any indication of the information sought by the Appellants. Their request for “any” meeting minutes “regarding” the ESOP in the last three years was akin to asking Lundy to comb the past three years of trustees’ meeting minutes to determine if they contained any information that could possibly be encompassed by § 104(b)(4). Accordingly, Lundy wrote to the Appellants seeking clarification of this request. Lundy stated, “|Y]our request ... is unclear, overly broad and does not appear to be within the scope of Section 104(b)(4) of ERISA.... [I]t would be appreciated if you could further define your request-” (J.A. 32). The Appellants refused to clarify the request. Therefore, assuming arguendo that § 104(b)(4) may encompass certain trustees’ meeting minutes, Lundy did not violate § 104(b)(4) by failing to provide the trustees’ meeting minutes in this ease.
5.
Finally, the Appellants requested “any policies adopted by the fiduciaries of the [ESOP], including, but not limited to, any investment policy, trustee expense policy, cost-sharing policy and funding policy.” (J.A. 30). Lundy asked the Appellants to clarify this request and the Appellants refused.
On appeal, the Appellants assert that the cost-sharing policy determines the percent age of ESOP expenses that will be borne by the ESOP and by Lundy. They argue that they did not provide clarification of their request for this policy because “cost-sharing policy” is a term of art that any plan administrator should understand. But we cannot take judicial notice that the plan administrator should know the meaning of “cost-sharing policy.” See Minnesota Fed’n of Teachers v. Randall, 891 F.2d 1354, 1359 n. 9 (8th Cir.1989) (refusing to take judicial notice of a fact for the first time on appeal). The record indicates that the plan administrator did not know what “cost-sharing policy” means. The ESOP does not use the term, and Held, who responded to the Appellants’ requests on behalf of Lundy, the plan administrator, testified that she did not know what a cost-sharing policy is. Therefore, assuming ar- *656 guendo that a cost-sharing policy, as defined by the Appellants, could constitute a formal or legal document under which a plan is managed, we conclude that the Appellants were not entitled to such a policy in this case.
Similarly, the Appellants were not entitled to receive a trustee expense policy. The Appellants assert that the trustee expense policy determines which expenses of the trustee will be paid by the ESOP. Whether such a policy could ever constitute a formal or legal document under which a plan is managed is a question we need not decide, because the record does not indicate that such a policy exists in this case.
The Appellants were, however, entitled to the funding and investment policies. As described in the ESOP, the funding and investment policies set forth Lundy’s obligations to fund the ESOP and explain the responsibilities regarding investing the assets of the ESOP. Thus, both the funding policy and the investment policy are formal documents under which the ESOP is managed. They are therefore encompassed by § 104(b)(4).
Moreover, the request for the funding and investment policies provided Lundy with clear notice as to the information sought by the Appellants. The ESOP contemplates the establishment of funding and investment policies, and the Appellants’ request refers to the funding and investment policies by name. In her deposition testimony, Held indicated that she knew what a funding policy and an investment policy were and that the ESOP has a funding policy and an investment policy. Accordingly, we conclude that the Appellants’ refusal to clarify their request for the funding and investment policies does not excuse Lundy’s failure to provide these policies to the Appellants.
B.
The Appellants and the Amici next argue that even if Lundy, as the plan administrator, was not required to furnish the Appellants the requested documents under § 104(b)(4), Fetterman and Held, the plan fiduciaries who determined which documents Lundy would provide to the Appellants, were required to furnish the requested documents under ERISA § 404(a)(1)(A). Section 404(a)(1)(A) provides:
[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
(A) for the exclusive purpose of:
(i) providing benefits to participants and their beneficiaries; and
(ii) defraying reasonable expenses of administering the plan....
29 U.S.C. § 1104(a)(1)(A).
Section 404(a)(1)(A) is included in the fiduciary responsibility provisions of ERISA. See 29 U.S.C. §§ 1101-14. The fiduciary responsibility provisions invoke the common law of trusts. See Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 570, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985); S.Rep. No. 127, 93d Cong. (1973), reprinted in 1974 U.S.C.C.A.N. 4639, 4865 (“The fiduciary responsibility section, in essence, codifies and makes applicable to [ERISA] fiduciaries certain principles developed in the evolution of the law of trusts.”). At common law, trustees have a duty to give beneficiaries upon request “complete and accurate information as to the nature and amount of the trust property.” Restatement (Second) of Trusts § 173 (1959). And beneficiaries are “always entitled to such information as is reasonably necessary to enable [them] to enforce [their] rights under the trust or to prevent or redress a breach of trust.” Id. cmt. c.
The Appellants and the Amici assert that the information requested by the Appellants will help the Appellants to enforce their rights and to prevent a breach of trust. They argue that the Appellants are therefore entitled to the information under § 404(a)(1)(A), because that statute incorporates the common-law principle that beneficiaries are entitled to information that is reasonably necessary to enable them to enforce their rights or to prevent a breach of trust. The Appellants and the Amici thus argue that even if § 104(b)(4) does not require the administrator of the ESOP to furnish the requested documents, § 404(a)(1)(A) *657 requires the fiduciaries of the ESOP to furnish the requested documents.
To accept the argument of the Appellants and the Amici we would have to hold that ERISA’s general fiduciary duty provision, § 404(a)(1)(A), requires plan fiduciaries to furnish documents to participants and beneficiaries in addition to the documents that ERISA’s specific disclosure provision, § 104(b)(4), requires the plan administrator to furnish. Such a holding would conflict with the principle that specific statutes govern general statutes. See Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992); Farmer v. Employment Sec. Comm’n, 4 F.3d 1274, 1284 (4th Cir.1993). “However inclusive may be the general language of a statute, it ‘will not be held to apply to a matter specifically dealt with in another part of the same enactment.’ ” Clifford F. MacEvoy Co. v. United States, 322 U.S. 102, 107, 64 S.Ct. 890, 894, 88 L.Ed. 1163 (1944) (quoting D. Ginsberg & Sons v. Popkin, 285 U.S. 204, 208, 52 S.Ct. 322, 323, 76 L.Ed. 704 (1932)). This principle “applies with special force with regard to a reticulated statute such as ERISA.” Bigger v. American Commercial Lines, 862 F.2d 1341, 1344 (8th Cir.1988); see also Pension Benefit Guar. Corp. v. Al-loytek, Inc., 924 F.2d 620, 626 (6th Cir.1991).
In Bigger, the court rejected an attempt to use the general fiduciary duty standard of § 404(a)(1)(A) to expand the duties imposed under another ERISA section that specifically governed the situation at issue. 862 F.2d at 1344. We likewise decline to use § 404(a)(1)(A) to expand the duties imposed under § 104(b)(4), the ERISA section that specifically governs the situation at issue here — a request for documents related to the ESOP. As the Supreme Court has noted, ERISA’s reporting and disclosure scheme, which includes § 104(b)(4), “may not be a foolproof informational scheme, although it is quite thorough. Either way, it is the scheme that Congress devised. And we do not think Congress intended it to be supplemented by a far-away provision in another part of [ERISA.]” Curtiss-Wright Corp. v. Schoonejongen, — U.S. -, -, 115 S.Ct. 1223, 1231, 131 L.Ed.2d 94 (1995).
The Appellants and the Amici maintain that the case law construing § 404(a)(1)(A) supports their position that § 404(a)(1)(A) requires plan fiduciaries to furnish information to participants and beneficiaries in addition to the documents that § 104(b)(4) requires plan administrators to furnish. Our review of the case law, however, reveals no support for their position.
The Appellants and the Amici rely mainly on the panel opinion in Hughes, 39 F.3d 1002 (9th Cir.1995). The panel stated that § 404(a)(1)(A) may, under some circumstances, require the furnishing of information in addition to the information required to be furnished by § 104(b)(4). Id. at 1006 (citing Acosta v. Pacific Enters., 950 F.2d 611, 618 (9th Cir.1991)). As noted above, however, dining the pendency of this appeal, the Ninth Circuit, sitting en banc, vacated the panel opinion in Hughes. The en banc court expressly declined to decide “[w]hether § 404(a)(1)(A), a general ERISA provision, may be interpreted to require the disclosure of documents that relate to the provision of benefits or the defrayment of expenses but are not documents required to be disclosed under § 104(b)(4), ERISA’s specific disclosure provision.” Hughes, 72 F.3d at 694.
The other cases cited by the Appellants and the Amici in support of their argument merely hold that ERISA fiduciaries may not mislead participants or beneficiaries; the cases do not recognize a general fiduciary obligation under ERISA to provide information related to the plan on request. See Howe v. Varity Corp., 36 F.3d 746, 753 (8th Cir.1994) (holding that an employer who used misrepresentations to induce employees to transfer to a newly created, undercapitalized sister company, with the intention of ridding itself of obligations under an employee benefit plan, violated § 404(a)(1)(A)), aff'd, — U.S.-, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996); Mullins v. Pfizer, Inc., 23 F.3d 663, 669 (2d Cir.1994) (holding that plan administrators may not make affirmative material misrepresentations to plan participants regarding changes to employee benefit plans); Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300 (3d Cir.1993) (stating that trustees have a *658 duty not to misinform beneficiaries and to disclose information to beneficiaries when the trustee knows that failure to disclose might be harmful to beneficiaries); Anweiler v. American Elec. Power Serv. Corp., 3 F.3d 986, 991-92 (7th Cir.1993) (holding that defendants breached their fiduciary duties by persuading a plan participant to designate one of the defendants the beneficiary of his life insurance policy, where the participant was led to believe that he was required to make the designation in order to receive his benefits); Fischer v. Philadelphia Elec. Co., 994 F.2d 130, 136 (3d Cir.) (holding that “[a] plan administrator may not make affirmative material misrepresentations to plan participants about changes to an employee pension benefit plan”), cert. denied, 510 U.S. 1020, 114 S.Ct. 622, 126 L.Ed.2d 586 (1993); Drennan v. General Motors Corp., 977 F.2d 246, 251 (6th Cir.1992) (holding that an employer violated its fiduciary duties by misleading employees regarding the availability of participation in a plan), cert. denied, 508 U.S. 940, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993); Eddy v. Colonial Life Ins. Co., 919 F.2d 747, 750-51 (D.C.Cir.1990) (holding that an ERISA fiduciary violated its fiduciary duties when a participant whose insurance coverage was being terminated inquired about the possibility of maintaining coverage and the fiduciary failed to disclose sufficient information regarding his options for maintaining coverage); Berlin v. Michigan Bell Tel. Co., 858 F.2d 1154, 1163 (6th Cir.1988) (holding that “a fiduciary may not materially mislead those to whom the duties of loyalty and prudence described in [§ 404] are owed”). Here, the Appellants do not allege that they have been misled; they allege that they need the requested information to exercise an oversight role regarding the ESOP. Therefore, the cases discussed above are inapposite.
C.
The Appellants argue that even if they are not entitled to the requested documents under § 104(b)(4) or § 404(a)(1)(A), they are entitled to the documents under § 404(a)(1)(D). Section 404(a)(1)(D) requires plan fiduciaries to discharge their duties with respect to a plan “in accordance with the documents and instruments governing the plan.” 29 U.S.C. § 1104(a)(1)(D). The Appellants assert that the SPD, one of the documents and instruments governing the ESOP, entitles them to obtain the documents they requested. They accordingly maintain that Fetterman and Held violated § 404(a)(1)(D) by failing to furnish the Appellants with the requested documents.
ERISA authorizes the Secretary of Labor to promulgate a regulation requiring administrators of employee benefit plans to provide participants with a statement of their rights under ERISA. See 29 U.S.C. § 1024(c). Pursuant to this authorization, the Secretary has promulgated a regulation requiring SPDs to contain a statement of ERISA rights. See 29 C.F.R. § 2520.102-3(t)(1). The regulation also sets forth a model statement of ERISA rights. See 29 C.F.R. § 2520.102-3(t)(2). The SPD language relied upon by the Appellants here tracks, almost verbatim, the model statement of ERISA rights set forth in the regulation.[5] Thus, the language relied on by the Appellants is included in the SPD in an attempt to comply with the regulation. The language does not create additional disclosure obligations beyond the disclosure obligations imposed by ERISA.
To summarize, we conclude that neither § 404(a)(1)(A) nor § 404(a)(1)(D) requires Fetterman and Held to furnish the documents at issue in this case to the Appellants. However, § 104(b)(4) requires Lundy to furnish the funding and investment policies to the Appellants. We now proceed to consider the Appellants’ arguments regarding the appropriate penalties for Lundy’s failure to furnish the Appellants all the documents to which they were entitled under § 104(b)(4).
*659 III.
Under ERISA § 502(c)(1), a district court may, in its discretion, assess penalties of up to $100 a day against plan administrators who fail to furnish requested documents that are required to be furnished by § 104(b)(4). See 29 U.S.C. § 1132(c)(1); Glocker v. W.R. Grace & Co., 974 F.2d 540, 544 (4th Cir.1992). In accordance with this discretionary authority, the district court ordered Lundy to pay each Appellant $2500 because of Lundy’s delay in furnishing the Form 5500s and its failure to furnish the contracts with custodians of assets, investment managers, and insurers of Plan assets. The Appellants argue that the district court should have imposed a larger penalty against Lundy.
The purpose of § 502(c)(1) is not to compensate participants for injuries, but to punish noncompliance with ERISA. Daughtrey v. Honeywell, Inc., 3 F.3d 1488, 1494 (11th Cir.1993). Accordingly, prejudice to the party requesting the documents is not a prerequisite to the imposition of penalties. See Moothart v. Bell, 21 F.3d 1499, 1506 (10th Cir.1994). But prejudice is a factor that a district court may consider in deciding whether to impose a penalty. Id. The district court may also consider whether the administrator acted in bad faith. See Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 588 (1st Cir.1993).
The district court determined that Lundy did not act in bad faith and that the Appellants did not suffer prejudice as a result of Lundy’s refusal to furnish the Form 5500s and the contracts with custodians of assets, investment managers, and insurers of plan assets. We find no reversible error in these determinations as they relate to the Form 5500s and the contracts with custodians of assets, investment managers, and insurers of plan assets. However, in light of our conclusion that § 104(b)(4) encompasses the funding and investment policies and that clarification of the Appellants’ request for these documents was not necessary, we remand to the district court to determine whether, in its discretion, any additional penalties should be imposed because of Lundy’s failure to furnish these policies to the Appellants.[6]
IV.
For the reasons stated herein, the district court’s determination that the Appellants were not entitled to the funding and investment policies is reversed. In all other respects, the district court’s orders are affirmed. The case is remanded for the district court to determine whether, in its discretion, any additional penalties should be imposed on Lundy for its failure to furnish these policies.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.

. The American Association of Retired Persons and the National Employment Lawyers Association have filed a brief amici curiae in support of the Appellants.

. The Appellants also argue that the scope of § 104(b)(4) is broad because it is coextensive with § 107, which requires plan administrators and others to maintain an extensive array of documents that verify information contained in reports that must be filed with the government. See 29 U.S.C. § 1027. The Appellants argue that documents required to be maintained under § 107 must be furnished on request under § 104(b)(4). The Appellants have not cited any case holding that the scope of § 104(b)(4) is coextensive with § 107, and we have not found one. Moreover, nothing on the face of the two statutes indicates that they are coextensive. Section 104(b)(4) does not in any way reference § 107, and the two statutes do not use similar language. Therefore, § 107 and § 104(b)(4) are not coextensive.

. Although one case in this circuit touches on the meaning of § 104(b)(4), it does not delineate the scope of documents encompassed by the statute. See Aliff v. BP America, Inc., 26 F.3d 486 (4th Cir.1994). Aliff involved several ERISA issues, including a request for an actuarial report used to determine whether the plaintiffs would receive benefits under an involuntary separation program (ISP). The district court held that the plaintiffs were not entitled to the actuarial report under § 104(b)(4). The district court stated, "This statute does not require the plan administrator to supply a copy of the pertinent actuarial report. The Court also notes that Plaintiffs were provided with a copy of the ISP, the document 'under which the [severance] plan ... [was] established or operated.’ " Aliff v. BP America, Inc., 826 F.Supp. 178, 188 (S.D.W.Va.1993) *654 (quoting § 104(b)(4)). On appeal, we addressed certain issues in detail, but summarily affirmed the district court’s rulings on other issues, including the § 104(b)(4) issue, "for the reasons stated in the district court’s opinion." Aliff, 26 F.3d at 490. Aliff did not purport to delineate the scope of § 104(b)(4). It simply addressed the application of § 104(b)(4) to the particular document at issue in the case.

. Tax qualification of an ESOP results in favorable tax treatment for the employer and the participants. See I.R.C. § 401(a).

. The SPD states:
16. ERISA RIGHTS. As a Member in the Plan you are entitled to certain rights and protections under [ERISA]. ERISA provides that all Plan Members shall be entitled to:
(a) Examine, without charge, ... all Plan documents, including insurance contracts....
(b) Obtain copies of all Plan documents and other Plan information upon written request to the Plan Administrator....
(J.A. 210).

. The Appellants also argue that Fetterman and Held violated § 404(a)(1) by breaching the fiduciary standards of loyalty and care. The Appellants maintain that in responding to their requests for documents, Fetterman and Held put the interests of Lundy before the interests of the ESOP participants and failed to exercise care in determining which documents they were required to furnish the Appellants. The Appellants seek the removal of Fetterman and Held as trustees of the ESOP because of these alleged fiducia-iy breaches. Removal of trustees is appropriate when the trustees have engaged in repeated or substantial violations of their fiduciary duties. See 29 U.S.C. § 1109; Katsaros v. Cody, 744 F.2d 270, 281 (2d Cir.), cert. denied, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). Assuming that the conduct of Fetterman and Held amounted to breaches of their fiduciary duties, the breaches were not substantial or repeated. Therefore, their removal as trustees is not warranted.