# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 14, 2014

Lyle W. Cayce
Clerk

No. 13-11117

———————

PHILIP A. MURPHY, JR.; SANDRA R. NOE; CLAIRE M. PALMER, Individually and as Representative of plan participants and plan beneficiaries of Verizon's Pension Plans involuntarily re-classified and treated as transferred into IDEARC's Pension Plans,

Plaintiffs - Appellants

v.

VERIZON COMMUNICATIONS, INCORPORATED; VERIZON EMPLOYEE BENEFITS COMMITTEE; VERIZON PENSION PLAN FOR NEW YORK AND NEW ENGLAND ASSOCIATES; VERIZON MANAGEMENT PENSION PLAN; SUPERMEDIA EMPLOYEE BENEFITS COMMITTEE, formerly known as Idearc Employee Benefits Committee; VERIZON CORPORATE SERVICES GROUP, INCORPORATED; VERIZON ENTERPRISES MANAGEMENT PENSION PLAN; VERIZON PENSION PLAN FOR MID-ATLANTIC ASSOCIATES,

Defendants - Appellees

———————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:09-CV-2262

———————

Before KING, GRAVES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

———————

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

No. 13-11117

This suit arises from the November 17, 2006 spin-off of Verizon Communications Inc.'s information services unit into a new corporation called Idearc, Inc., which subsequently evolved into SuperMedia, Inc.  The spin-off is described in greater detail in *U.S. Bank National Association v. Verizon Communications, Inc.*, No. 13-10752, 2014 WL 3746476, --- F.3d --- (5th Cir. 2014).  In 2009, several retirees whose pension benefits were transferred from Verizon pension plans to Idearc pension plans as part of the spin-off— Appellants Philip A. Murphy, Jr., Sandra R. Noe, and Claire M. Palmer— brought a class action suit against Appellees—Verizon, the Idearc (and later the SuperMedia) pension plans, and the Verizon pension plans—asserting a variety of claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*  The claims arose from the Verizon Appellees' alleged breach of their duties to the plan during the spin-off, as well as Appellees' alleged failure to turn over certain documents and disclose certain information to the retirees.

## I.    Appellants' ERISA Claims

The district court resolved Appellants' claims under ERISA Sections 406(b)(2) and (b)(3), 29 U.S.C. §§ 1106(b)(2) and (b)(3), ERISA Section 404(a)(1), 29 U.S.C. § 1104(a)(1),[1] and ERISA Section 102(b), 29 U.S.C. § 1022(b), in a thorough and well-reasoned Memorandum Opinion and Order filed September 16, 2013, granting Appellees' motions for summary judgment and denying Appellants' partial motion for summary judgment.  We affirm the grant of summary judgment on these claims for essentially the reasons expressed in the Memorandum Opinion and Order.

---

[1] Appellants assert two claims under ERISA Section 404(a)(1)—one for breach of fiduciary duties stemming from the transfer of the pensions, and another with respect to Appellees' alleged failure to produce certain documents.  The latter claim is discussed in more detail below.

Appellants' claims under ERISA Section 104(b)(4), 29 U.S.C. § 1024(b)(4), and ERISA Section 404(a)(1), 29 U.S.C. § 1104(a)(1), relating to Appellees' failure to produce certain documents, were dismissed under Rule 12(b)(6) in a separate Memorandum Opinion and Order filed October 18, 2010. We address those claims below.

**A. ERISA Section 104(b)(4)**

Under ERISA Section 104(b)(4), plan administrators must, "upon written request of any participant or beneficiary, furnish a copy of the latest updated summary[] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). If a plan administrator fails to comply with this requirement, the district court has discretion to impose a penalty of up to $110 per day. 29 U.S.C. § 1132(c)(1)(B); 29 C.F.R. § 2575.502c–1.

Appellants contend that the documents they sought from Appellees fall under Section 104(b)(4)'s catch-all clause, *i.e.*, that they constitute "other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). As an initial matter, in their first amended complaint, Appellants alleged that Appellees failed to turn over a variety of documents—including actuarial reports, IRS approvals and qualifications, and investment guidelines. However, in their opening brief on appeal, Appellants discuss only Appellees' failure to produce investment guidelines as supporting a violation of Section 104(b)(4). Therefore, we will only consider Appellants' claims with respect to these documents, as arguments not raised in an opening brief on appeal are waived. *See Steering Comm. v. Wash. Grp. Int'l, Inc. (In re Katrina Canal Breaches Litig.)*, 620 F.3d 455, 459 n.3 (5th Cir. 2010).

This circuit has not directly addressed the scope of Section 104(b)(4)'s catch-all clause. However, other circuits have—and they have differed in their

interpretations of the clause.  The Sixth Circuit has adopted what appears to be a minority view, construing the clause broadly.  In *Bartling v. Fruehauf Corp.*, 29 F.3d 1062 (6th Cir. 1994), a company informed its employees of its pending sale and replaced a previous pension plan for its employees with a new plan.  The original plan's participants requested certain plan-related documents, some of which the company refused to provide.  *Id.* at 1065–66. The participants sued, arguing that they were entitled, under Section 104(b)(4), to: (1) actuarial valuation reports; (2) portions of the purchase agreement relating to pension and welfare benefits; and (3) the calculation procedure used to compute benefits.  *Id.* at 1069.  The Sixth Circuit concluded on appeal that "[b]ecause an actuarial valuation report is *required* for every third plan year, § 1023(d), these reports are indispensable to the operation of the plan."  *Id.* at 1070.  The court further noted that "the purpose of ERISA's disclosure requirements is to ensure that 'the individual participant knows exactly where he stands with respect to the plan.'"  *Id.* at 1070 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989)).  Therefore, "all other things being equal, courts should favor disclosure where it would help participants understand their rights."  *Id.*  The Sixth Circuit also found that the plan administrator was required under Section 104(b)(4) to produce the calculation procedure for computing benefits, although the court did not provide any explanation as to why such documents fell under the catch-all provision.  *Id.* at 1071.  Finally, the court held that the plan administrator was not required to provide the purchase agreement, because it did not exist at the time that the original plan was terminated.  *Id.* at 1070.[2]

---

[2] In *Allinder v. Inter-City Prods. Corp. (USA)*, 152 F.3d 544 (6th Cir. 1998), the Sixth Circuit held that a plan administrator's failure to complete a form necessary for a plan participant to file a long-term disability insurance claim did not violate Section 104(b)(4).  In reaching this holding, the court distinguished documents "used in the *ministerial day-to-day processing* of individual claims," which are not covered under Section 104(b)(4), from

In *Hughes Salaried Retirees Action Committee v. Administrator of the Hughes Non-Bargaining Retirement Plan ("Hughes")*, 72 F.3d 686 (9th Cir. 1995) (en banc), the Ninth Circuit applied a slightly narrower construction of the catch-all clause, concluding that a plan was not required to produce, under Section 104(b)(4), a list of the names and addresses of all retired participants of the plan. The court rejected the participants' argument that such a list was an instrument "under which the plan is established or operated" allegedly because the plan could not operate without it. *Id.* at 689 (quoting 29 U.S.C. § 1024(b)(4)). According to the Ninth Circuit, interpreting Section 104(b)(4) to require the disclosure of all documents that are "critical to the operation of the plan" lacks a limiting principle, and would mandate the disclosure of personal information about participants. *Id.* at 690 (internal quotation marks omitted). The court concluded that "[t]he relevant documents are those documents that provide individual participants with information about the plan and benefits." *Id.* Applying that standard, the court explained that, "[u]nlike the documents specifically listed in § 104(b)(4) . . . participants' names and addresses provide no information about the plan or benefits." *Id.*[3]

The majority of courts, however, have adopted an even stricter construction of the catch-all clause, concluding that it applies only to formal legal documents. In *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 653 (4th Cir. 1996), a divided panel of the Fourth Circuit determined that, because the language of Section 104(b)(4) was "clear and unambiguous," it did not need to

---

"documents that provide or contain information *concerning the terms and conditions of the participant's policy*," which are covered. *Id.* at 549. Notably, the panel in *Allinder* did not cite that court's previous holding in *Bartling*, 29 F.3d 1062.

[3] *See also Shaver v. Operating Eng'rs Local 428 Pension Trust Fund,* 332 F.3d 1198, 1202 (9th Cir. 2003) (concluding that "other instruments" refers to "legal documents that describe the terms of the plan, its financial status, and other documents that restrict or govern the plan's operation" and that itemized lists of plan expenditures need not be disclosed because they "relate only to the manner in which the plan is operated").

rely on legislative history. *Id.* at 653. The court, defining "instrument" as "[a] formal or legal document in writing, such as a contract, deed, will, bond, or lease," *id.* (quoting Black's Law Dictionary 801 (6th ed. 1990)), concluded that the clause "encompasses only formal or legal documents under which a plan is set up or managed," *id.* at 654. The Fourth Circuit rejected the Sixth Circuit's holding in *Bartling* that courts addressing requests under Section 104(b)(4) should apply a "presumption of disclosure." *Id.* (citing *Bartling*, 29 F.3d at 1070). The court also stated that the Ninth Circuit's suggestion in *Hughes* that plan administrators must turn over documents that provide participants "documents that provide information about the plan and benefits," conflicts with Congress's decision not to "use[] language to that effect." *Id.* (citing *Hughes*, 72 F.3d at 690). Even applying its stricter test, the court found that the petitioners were entitled to the plan's funding and investment policies because, "[a]s described in the [plan], the funding and investment policies set forth [the employer]'s obligations to fund the [plan] and explain the responsibilities regarding investing the assets of the [plan]." *Id.* at 656.[4]

The Second Circuit, applying a similar construction of the clause, concluded that a plan administrator was not required to produce copies of a plan's actuarial reports because the term "instrument . . . connotes a formal legal document." *Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 142, 145 (2d Cir. 1997).[5] Following *Faircloth* and

---

[4] The court concluded, however, that: (1) appraisal and valuation reports of company stock which "simply derive the value of [the company's] stock"; (2) an IRS determination letter showing that the Plan was tax-qualified; (3) minutes of trustee meetings; (4) the cost-sharing policy; and (5) the trustee expense policy did not fall within the catch-all clause because the requests were either too broad or vague, the documents did not exist, or the plan was not set up or managed under those documents. *Id.* at 653–56.

[5] As further support for this construction, the court noted that the enumerated documents listed in Section 104(b)(4) were all "formal documents," *id.* at 143, and found that the term "instrument" was used in other sections of ERISA "to connote a formal governing document," *id.*

*Weinstein*, several other circuits have interpreted the catch-all provision similarly. *See Brown v. Am. Life Holdings, Inc.*, 190 F.3d 856, 861–62 (8th Cir. 1999) (construing "other instruments" as meaning "not any document[s] relating to a plan, but only formal documents that establish or govern the plan" and concluding that there was no Section 104(b)(4) claim for failure to provide corporate actions replacing administrative committee members, meeting minutes, and written communications between the committee and trustee); *Ames v. Am. Nat'l Can Co.*, 170 F.3d 751, 758 (7th Cir. 1999) (noting that "[o]ther courts of appeals have found that the use of the term 'instruments' implies that the statute reaches only formal legal documents governing a plan" and agreeing "with our sister circuits that [a contrary] interpretation would make hash of the statutory language, which on its face refers to a specific set of documents: those under which a plan is established or operated");[6] *Doe v. Travelers Ins. Co.*, 167 F.3d 53, 60 (1st Cir. 1999) (holding that mental health guidelines were not "'other instruments,' a phrase that in context refers to the formal legal documents that underpin the plan" because the plan administrator "was not bound to use them, nor did patients have any legal rights under them").

We agree with the majority of the circuits which have construed Section 104(b)(4)'s catch-all provision narrowly so as to apply only to formal legal

---

[6] The Seventh Circuit has also concluded that superseded plan documents do not fall under Section 104(b)(4)'s disclosure obligations. *See Huss v. IBM Med. & Dental Plan*, 418 F. App'x 498, 510 (7th Cir. 2011) (unpublished); *Shields v. Local 705, Int'l Bhd. of Teamsters Pension Plan*, 188 F.3d 895, 903 (7th Cir. 1999). However, according to the Seventh Circuit, "[w]hen a claims administrator mistakenly relies on an expired version of the plan document, a set of internal guidelines, or any other extraneous document in lieu of the governing plan language and, indeed, cites the language of that document as controlling to the participant, then the participant must have access to that document in order to understand what the claims administrator is doing and to effectively assert his rights under the plan." *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 800 (7th Cir. 2009).

documents that govern a plan. As other courts have noted, such a construction is consistent with the plain meaning of the term "instrument," *i.e.*, "[a] written legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate." Black's Law Dictionary 918 (10th ed. 2014); *see also* Webster's Third New International Dictionary 1172 (1961) (defining "instrument" as "a legal document (as a deed, will, bond, lease, agreement, mortgage, note, power of attorney, ticket on carrier, bill of lading, insurance policy, warrant, writ) evidencing legal rights or duties esp. of one party to another"). Moreover, the other documents specifically listed in Section 104(b)(4)—plan descriptions, annual reports, terminal reports, bargaining agreements, trust agreements, and contracts— are all formal documents that either provide plan participants and beneficiaries with notice of their rights and obligations or are the foundational documents under which a plan is created and governed. *See Weinstein*, 107 F.3d at 142–43. "[O]ther instruments" should be interpreted similarly because, under the statutory canon *ejusdem generis*, "when a statute sets out a series of specific items ending with a general term, that general term is confined to covering subjects comparable to the specifics it follows." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008).

With that construction in mind and assuming, without deciding, that investment guidelines could, under certain circumstances, constitute "other instruments" under Section 104(b)(4), Appellants' claim for the investment guidelines at issue here fails. Although Appellants conclusorily alleged in their first amended complaint that the investment guidelines are "'instrument[s]' under which the pension plan is 'established or operated,' within the meaning of ERISA Section 104(b)(4)," we "are not bound to accept as true a legal conclusion couched as a factual allegation." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). As the lower court correctly

noted, Appellants neither specifically pleaded that the guidelines are binding on the plans at issue here, nor attached to the complaint portions of the plans or guidelines indicating the guidelines' mandatory effect. Because the guidelines are not alleged to be binding, they do not "define[] rights, duties, entitlements, or liabilities." Black's Law Dictionary 918 (10th ed. 2014).

Our holding is not inconsistent with that reached in *Faircloth*, 91 F.3d 648, in which the Fourth Circuit determined that the investment policies at issue constituted "other instruments" under Section 104(b)(4). There, the plan "contemplate[d] the establishment of funding and investment policies." *Id.* at 656. Indeed, it was clear in that case that the "funding and investment policies set forth [the employer]'s obligations to fund the [plan] and explain[ed] the responsibilities regarding investing the assets of the [plan]." *Id.* Here, in contrast, Appellants failed to allege that the investment guidelines set forth any such rights or obligations.

Appellants also point to a Department of Labor (DOL) bulletin interpreting ERISA Section 404(a)(1)(D), which requires that "a fiduciary . . . discharge his duties with respect to a plan . . . in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). According to the DOL bulletin, "[s]tatements of investment policy issued by a named fiduciary authorized to appoint investment managers would be part of the 'documents and instruments governing the plan.'" 29 C.F.R. § 2509.08–2 (2008) (quoting 29 U.S.C. § 1104(a)(1)(D)).[7] Appellants do not argue that we are required to afford this bulletin deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). In any event,

---

[7] Appellants actually cite an earlier 1994 DOL bulletin on this topic. *See* 29 C.F.R. § 2509.94–2. However, the 2008 bulletin cited above "modifies and supersedes" the earlier bulletin. 29 C.F.R. § 2509.08–2. In any event, the relevant portions of both bulletins are virtually identical.

such deference is not warranted, as the agency was construing a different statute than the one at issue here. *See id.* at 843 (holding that "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction *of the statute*" (emphasis added)); *see also Torres-Valdivias v. Holder*, No. 11-70532, 2014 WL 4377469, at *6, --- F.3d --- (9th Cir. 2014) ("Because . . . the outcome here is not directly controlled by [a Board of Immigration Appeals (BIA) decision], which address[es] different INA provisions, we may not grant the BIA . . . *Chevron* deference" (footnote omitted)).  The two statutes—though similar—differ in one material respect.  Section 104(b)(4) concerns only "*instruments* under which the plan is established or operated," 29 U.S.C. § 1024(b)(4) (emphasis added), while Section 404(a)(1)(D) applies to "*documents and instruments* governing the plan," 29 U.S.C. § 1104(a)(1)(D) (emphasis added).  Thus, the latter is broader than the former and may not necessarily be limited to formal legal documents.  *See, e.g.*, Black's Law Dictionary 587 (10th ed. 2014) (defining "document" as "[s]omething tangible on which words, symbols, or marks are recorded").

Appellants' reliance on our decision in *Laborers National Pension Fund v. Northern Trust Quantitative Advisors, Inc.*, 173 F.3d 313 (5th Cir. 1999), is similarly unavailing.  In that case—in which we too were interpreting Section 404(a)(1)(D), as opposed to Section 104(b)(4)—we held that Section 404(a)(1)(D) required that the investment managers at issue make investment decisions in accordance with certain investment guidelines.  *Id.* at 318–20.  However, contrary to Appellants' contention, we did not establish as a matter of law that fiduciaries must always operate a pension in accordance with investment guidelines.  Rather, we concluded that Section 404(a)(1)(D) applied only because "[t]he parties treated the [investment policy] as part of the plan documents." *Id.* at 319.  In reaching this conclusion, we looked to the specific

language used in the investment guidelines. *Id*. at 318–19. Here, in contrast, the lower court was not able to make such a determination, as Appellants failed to attach or quote from either the plan or the investment guidelines in their first amended complaint.

Therefore, because Appellants did not adequately plead that the investment guidelines were mandatory, the lower court did not err in dismissing the Section 104(b)(4) claim.

### B. ERISA Section 404(a)(1)

Appellants also challenge the lower court's conclusion that Section 404(a)(1) creates no additional disclosure obligations beyond those found in Section 104(b)(4), thus warranting the former claim's dismissal.[8] This court's precedent confirms that, in fact, Section 404(a)(1)'s fiduciary duty may obligate at least responsive disclosure of relevant plan materials upon a specific request by a plan member. *See Kujanek v. Houston Poly Bag I, Ltd.*, 658 F.3d 483, 488–89 (5th Cir. 2011). In dismissing Appellants' claim that SuperMedia breached its Section 404(a)(1) duty, the lower court overlooked our *Kujanek* decision when it held that "ERISA section 404(a)(1) . . . does not create additional disclosure obligations beyond those found in ERISA section 104(b)(4)."

In this case, however, Appellants' claim for disclosure pursuant to Section 404(a)(1) is moot because they have already received all requested relief. *See McGoldrick Oil Co. v. Campbell, Athey & Zukowski*, 793 F.2d 649, 653 (5th Cir. 1986) (finding no justiciable dispute in an action seeking to

---

[8] Section 404(a)(1) specifies that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," and "for the exclusive purpose of providing benefits to participants" and "defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). Such duties shall be discharged "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B).

compel production of documents when defendant offered to produce the requested documents); *Kramer v. JP Morgan Chase Bank, N.A.*, 574 Fed. App'x 370, 376 (5th Cir. 2014) (unpublished) (finding claim moot because plaintiff sought only declaratory relief, which had already been given); 13B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3533.2 (3d ed.) ("[A]n offer to settle for all the relief the plaintiff might win by judgment may moot the action."). In the Amended Complaint, Appellants sought statutory damages for an alleged violation of Section 104(b)(4). For its alleged breach of fiduciary duty under Section 404(a)(1), however, Appellants sought only "equitable relief including injunctive relief ordering both Defendant Verizon EBC and Defendant Idearc EBC to disclose the information and produce the documents each has in its respective possession that is responsive to Plaintiffs' request for information." Although statutory damages may be available for a Section 404(a)(1) claim, Appellants did not seek damages for this claim. Having sought only production of the requested documents as a remedy for its Section 404(a)(1) claim, and conceding that they have received the requested documents, Appellants have therefore received all relief they sought for the alleged breach of fiduciary duty.

Since the claim is moot, there is no need for us to resolve the tension, if any, in our case law regarding the extent of disclosure obligations under Section 404(a)(1). *Compare Ehlmann v. Kaiser Found. Health Plan of Tex.*, 198 F.3d 552, 555–56 (5th Cir. 2000) (holding that under Section 404(a)(1), the court would not "add to the specific disclosure requirements that ERISA already provides" but noting it was not deciding "what sort of disclosure, if any, that Section 404 might require given a specific inquiry from a plan member or given some other special circumstance"), *with Kujanek,* 658 F.3d at 488–89 (holding that by withholding plan documents and rollover information that a plan participant specifically requested, the fiduciary "failed to act in [the plan

12

13

participant's] best interest and 'for the exclusive purpose of providing benefits to participants'" as required by Section 404(a)(1)).

## II.    Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.